[No. A019382. First Dist., Div. Two. July 5, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
BENJAMIN DIEGO ROMERO, Defendant and Appellant.

1150

**COUNSEL**

Madeline McDowell, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Ann K. Jensen, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

SMITH, J.—Benjamin Diego Romero appeals from a conviction of rape by force (Pen. Code, § 261, subd. (2)) and oral copulation by force (§ 288a, subd. (c)).

The complaining witness, Mrs. M., testified that she left her boyfriend's home in Pittsburg about 9:30 p.m. on August 10, 1981. She had only driven a few miles toward her home in Pacheco when the car "popped out of gear." The transmission would not reengage and Mrs. M.'s car coasted to a stop about 50 feet from the Railroad exit on Highway 4. The car came to rest on the side of the road with part of one rear fender extending over the

fog line into the traffic. It was a Sunday night and the traffic was heavy; the passing traffic had to swerve to avoid hitting her car. Mrs. M. sat in her car, smoking, and waiting for a highway patrolman to drive by.

She had been waiting for two hours when two men drove up in a truck. The driver got out of the truck and walked over to her car. Mrs. M. remained seated in her locked car but rolled down the window enough that they could talk. The man, whom Mrs. M. identified as appellant, pointed out that her car should be moved off the freeway because it posed a traffic hazard. He offered to go get a tow chain and pull the car from the freeway to the frontage road. Mrs. M. accepted his offer because she realized that she would be just as visible to passers-by sitting on the frontage road as she was on the freeway but that she would be much safer there. Appellant promised to be back with a tow chain in about 15 minutes.

He returned in less than five minutes without his passenger and without a tow chain. He proceeded to push the car off the freeway with the bumper of his truck. Once the car had come to rest on the road next to the freeway, he got out of the truck and walked over to the car. Appellant offered to push the car to a nearby truck yard where he could get a tow chain, and then to tow it to Mrs. M.'s house. Mrs. M. had only recently purchased her car and she wanted to avoid leaving it on the side of the road where it might get stripped. Appellant was dressed in a three-piece suit, and seemed to be a very nice person genuinely interested in helping her. After thinking it over, Mrs. M. decided to accept his offer.

Appellant pushed the car to a deserted truck yard. He got out of his truck, took off his suit jacket, and crawled under the fence surrounding the truck yard. He soon returned with a tow chain, hooked the two vehicles together, and began driving down the Port Chicago highway. They were headed down Main Street in Port Chicago when appellant's clutch began to emit smoke. Appellant turned onto a small dirt road. Mrs. M. became frightened, slammed on her brakes, and yelled "where are you going?" Appellant yelled back that he wanted to use a cul de sac at the end of the road to turn the vehicles around, and that he wanted to pull over long enough for his clutch to cool off.

There was a cul de sac at the end of the road, and appellant did turn the vehicles around. He then stopped the truck, got out and offered Mrs. M. a beer. She turned down the beer but accepted a cigarette from him; she had run out of her own while she waited for a highway patrolman to come by. Appellant then offered to see if he could fix her car, and asked if she had any tools. Mrs. M. was not sure whether or not there were any in the trunk, she handed appellant her keys so he could see if there were any there. He opened the trunk, rummaged around, and then asked her to come help him

by pulling aside the carpet when he lifted up the spare tire in the trunk. Mrs. M. got out of the car and walked over to the trunk. Appellant immediately grabbed her by the arm and put a sharp object to her neck. He said, "Don't fight me, you're going to get hurt. Just take it easy, lady, I'll teach you something about this road." Mrs. M. struggled with him, and managed to break free; she headed for the car door but appellant was able to grab her before she managed to get in the car. He put his head against her chest and apologized. Appellant was acting like "Doctor Jekyl and Mr. Hyde," and Mrs. M. tried to act in a manner that would keep him as calm as possible. After standing with his head against her chest for about 10 minutes he let go of her. Mrs. M. then tried to get back in her car, but appellant grabbed her and slammed her into the car door and demanded that she have intercourse with him. Mrs. M. pleaded with him to take her car and her money but to leave her alone. He, however, insisted on having sexual intercourse. Mrs. M. submitted out of fear, she told him, "Get it over with and leave me alone. I want to go home." Appellant proceeded to orally copulate and rape her. When he was done, appellant dressed, towed her car back onto Main Street, and drove off.

It was stipulated that Mrs. M.'s boyfriend, if called, would have testified that he and Mrs. M. had spent the evening in question together and that she had left his home at about 9:30 that night. It was also stipulated that appellant at the time of his arrest told the police he had not forced Mrs. M. to engage in sex with him, "we just had oral sex and drank a beer. She said it was good."

Appellant's sister, Diane Castro, testified that she had visited appellant at his home that Sunday night. There was a woman visiting him at the time, and Castro claimed that that woman "resembled" the complaining witness. Appellant did not testify at trial.

## I

■ Appellant asserts as error the court's failure to *sua sponte* instruct the jury that he could not be convicted if he mistakenly believed that Mrs. M. consented to the sexual acts alleged.

■ The California Supreme Court recognized the defense of mistaken belief as to consent (hereafter *Mayberry* defense) in *People* v. *Mayberry* (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337]. The court noted that under the provisions of the Penal Code there must, as a rule, exist a union of illegal act and wrongful intent before a crime is committed. A defendant who labors under a mistake of fact that negates the existence of any criminal intent generally cannot be convicted of a crime. As a result,

"[i]f a defendant entertains a reasonable and bona fide belief that a prosecutrix voluntarily consented to accompany him and to engage in sexual intercourse, it is apparent that he does not possess the wrongful intent that is a prerequisite . . . to a conviction of . . . rape by means of force or threat . . . ." (*Id.*, at p. 155.)

The court in *People* v. *Hampton* (1981) 118 Cal.App.3d 324 [173 Cal.Rptr. 268] analyzed the *Mayberry* case and decided that a defendant who raises the defense of consent simultaneously asserts a *Mayberry* defense. "[T]he defendant who relies on the defense of consent necessarily also relies on the defense that he had a reasonable and good faith belief that there was consent. We conclude that in every case wherein consent is offered as a defense to a charge of rape or unlawful oral copulation, the court must instruct the jury [on the *Mayberry* defense]." (*Id.*, at pp. 329-330.) Under the reasoning of *Hampton* we could conclude, without further review, that the trial court erred by not giving such an instruction (hereafter *Mayberry* instruction) because appellant raised a defense of consent at trial. However, while we agree that the defense of consent and the *Mayberry* defense are compatible and often will be raised together, we cannot agree with the holding in *Hampton* that the two defenses are inseparable nor do we feel that the raising of consent necessarily compels a *sua sponte* instruction on the *Mayberry* defense.

In *Mayberry,* the defendant Franklin testified that the victim and he talked for a while, and that he went with her to buy cigarettes. According to Franklin, the victim willingly walked home with him, and willingly engaged in sexual intercourse. The victim testified that Franklin approached her and threatened to knock all her teeth out if she did not come with him. In an attempt to "buy time" she asked Franklin if she could buy some cigarettes, they then sat on the curb and Miss B. smoked a cigarette. Miss B. admitted that she was "put[ting] on an act," hoping that an opportunity to escape might arise. Although Miss B. apparently could have signaled to bystanders that she was in trouble on several occasions, she never felt that it was safe to do so. When Franklin took her by the elbow and guided her to his residence, she did not resist. (*People* v. *Mayberry, supra,* 15 Cal.3d 143 at pp. 147-149.)

Faced with those facts, the *Mayberry* court responded to the prosecution's argument that there was insufficient evidence to support the giving of a *requested* instruction on a reasonable but mistaken belief as to consent. (3) The court noted that where there is any evidence deserving of any consideration in support of a requested instruction, that instruction must be given. It concluded that the requested instruction should have been given because "Franklin's testimony summarized above could be viewed as indicating that

he reasonably and in good faith believed that Miss B. consented to accompany him to the apartment and to the subsequent intercourse." (*People* v. *Mayberry, supra,* 15 Cal.3d at p. 156.)

In contrast, the duty to *sua sponte* instruct the jury only arises when the general principles of law openly and closely connect with the facts necessary for the jury's understanding of the case. (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390].) ▮ Neither appellant here nor the defendant in *Hampton* requested a *Mayberry* instruction. The *Hampton* court, however, seemingly ignores the distinctions between the situations in which a court must give a requested instruction and those in which it must give an instruction on its own motion. It appears to conclude that the *Mayberry* court held that Franklin's testimony alone was sufficient to require a *sua sponte* instruction on the *Mayberry* defense. We disagree with *Hampton*'s conclusion because the *Mayberry* court never reached the issue of the evidence required for a *sua sponte* duty to instruct on the *Mayberry* defense to arise.

Furthermore, we find nothing in the *Mayberry* court's reasoning that implies that a defendant by raising the defense of consent will simultaneously, in each and every case, raise the *Mayberry* defense. The *Mayberry* court commented on Franklin's testimony as set forth above and then continued its analysis of the evidence: "In addition, . . . [i]t appears from [Miss B.'s] testimony that her behavior was equivocal. Although she did not want Franklin to think she was consenting, her 'act' and admitted failure physically to resist him after the initial encounter or to attempt to escape or to obtain help may have misled him as to whether she was consenting." (*People* v. *Mayberry, supra,* 15 Cal.3d at p. 156.) The *Hampton* court asserts that the victim's equivocal conduct was not a factor in the *Mayberry* court's decision but "simply provided *additional* support for the giving of the instruction." It then leaps to the conclusion that in every rape case where consent is at issue, the *Mayberry* defense is also at issue. (*People* v. *Hampton, supra,* 118 Cal.App.3d at pp. 329-330.) It is unclear whether the use of the phrase "in addition" implies that the *Mayberry* court would have reached the same result in the absence of Miss B.'s admittedly equivocal conduct towards Franklin. There is in any event no language in the opinion that compels or supports the conclusion that a claim of actual consent will automatically raise a *Mayberry* defense.

▮ The defense of consent and the *Mayberry* defense are two distinct defenses. Where the defendant claims that the victim consented, the jury must weigh the evidence and decide which of the two witnesses is telling the truth. The *Mayberry* defense, on the other hand, permits the jury to conclude that both the victim and the accused are telling the truth. The jury

will first consider the victim's state of mind and decide whether she consented to the alleged acts. If she did not consent, the jury will view the events from the defendant's perspective to determine whether the manner in which the victim expressed her lack of consent was so equivocal as to cause the accused to assume that she consented where in fact she did not. (*People* v. *Mayberry, supra,* 15 Cal.3d 143 at pp. 159-160.) A defendant relying on a *Mayberry* defense must produce some evidence of equivocal conduct by the victim which led him to reasonably believe that there was consent where in fact there was none. The defense of consent on the other hand might only involve the contention that the complaining witness lied about the events that took place, rather than a claim that her conduct was misleading. There would in that case be no evidence that the victim acted equivocally.

■ We conclude that a *Mayberry* defense cannot be raised without some evidence that the victim acted in a manner that reasonably could be misunderstood by the defendant. It follows that a trial court need only give a *Mayberry* instruction on its own motion where "it appears that a defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913].) ■ We therefore proceed to review the record to determine what evidence exists to support appellant's claim that the trial court should *sua sponte* have given a *Mayberry* instruction.

Appellant did not testify at trial. His sister testified that she saw a woman resembling Mrs. M. at appellant's apartment earlier in the evening on the night of the rape. A police officer who had spoken with appellant a few hours after the rape took place testified that appellant said that he had been fishing down on the Johns-Mansville dock that evening. When appellant was arrested the next day, he told the arresting officer that the rape "wasn't forceable. She said it was good."

There is evidence in the record to support a defense of consent. The jury could therefore have concluded, based on this evidence, that Mrs. M. was lying and that she in fact had consented to have sexual intercourse with appellant. The record is, however, devoid of evidence of any actions taken by Mrs. M. which might have caused appellant to mistakenly believe that she consented to have sex with him. Consequently, there was no evidence in the record upon which the jury could have based a conclusion that appellant genuinely and reasonably believed that Mrs. M. had consented once the jury found that she did not in fact consent. The court therefore did not err by not *sua sponte* giving a *Mayberry* instruction.

## II

The trial court sentenced appellant to a term of eight years on his conviction for rape, and imposed a full consecutive six-year term on his conviction for forced oral copulation under the provisions of Penal Code section 667.5, subdivision (c). The court, however, failed to give a statement of reasons for its choice of imposing a consecutive term under Penal Code section 667.5, subdivision (c) rather that under Penal Code section 1170.1. Respondent concedes that this was error under the holding in *People* v. *Belmontes* (1983) 34 Cal.3d 335 [193 Cal.Rptr. 882, 667 P.2d 686], and that the case should be remanded for resentencing.

The judgment is reversed and remanded for resentencing in accordance with the guidelines set forth in *People* v. *Belmontes, supra,* 34 Cal.3d at pp. 347-349.)

Kline, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied August 1, 1985, and appellant's petition for review by the Supreme Court was denied September 18, 1985. Broussard, J., and Grodin, J., were of the opinion that the petition should be granted.