[Nos. F001305, F002404. Fifth Dist. Jan. 24, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR A. BURNHAM, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II through V.

COUNSEL

Alexander M. Wolfe for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Willard F. Jones, Anthony L. Dicci, Roger E. Venturi and Ellen M. Peter, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

FITCH, J.*—Appellant was convicted by a jury of count I, violation of Penal Code sections 664 and 289, attempted penetration with foreign object, a felony; counts II through V, violations of Penal Code section 262, spousal rape, a felony; and count VI, violation of Penal Code section 245, subdivision (a), assault by means of force likely to produce great bodily injury, a felony. Appellant was thereafter sentenced to the state prison for the term of 13 years.

*Assigned by the Chairperson of the Judicial Council.

## I. FAILURE TO INSTRUCT ON CALJIC NO. 10.23 SUA SPONTE

### (a) Was it error?

As to counts I through V,[1] appellant contends he was denied effective assistance of counsel by virtue of defense counsel's failure to request CALJIC No. 10.23.[2] Appellant did not request, and the court did not give, an instruction pursuant to CALJIC No. 10.23. The theory of appellant's defense was that his wife was a voluntary participant in the various acts of sexual intercourse (counts II through V) and the act of penetration by a foreign object (count I).

In *People* v. *Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913] it was stated at page 715: ■ " 'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 . . . .)"

In *Sedeno,* the Supreme Court stated that the trial court's duty to instruct sua sponte on a particular defense arises "only if it appears that the defendant is relying on such a defense,[3] or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." (*People* v. *Sedeno, supra,* 10 Cal.3d at p. 716.) "Substantial evidence" in this specific context is defined as evidence which is "sufficient to 'deserve consideration by the jury, i.e., "evidence from which a jury composed of reasonable men could have concluded" ' that the particular facts underlying the instruction did exist." (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 324 [185 Cal.Rptr. 436, 650 P.2d

---

[1]Appellant raises a number of issues on appeal concerning these counts, including ineffective assistance of counsel. We need not decide them because our decision concerning the failure to instruct the jury *sua sponte* in the language of CALJIC No. 10.23 is dispositive.

[2]CALJIC No. 10.23 provides: "RAPE—BELIEF AS TO CONSENT. It is a defense to a charge of forcible rape that the defendant entertained a reasonable and good faith belief that the female person voluntarily consented to engage in sexual intercourse. If from all the evidence you have a reasonable doubt whether the defendant reasonably and in good faith believed she voluntarily consented to engage in sexual intercourse, you must give the defendant the benefit of that doubt and acquit him of said charge."

[3]As to the first portion of the *Sedeno* rule, "if it appears that the defendant is relying on such a defense," we assume that the Supreme Court did not intend to imply that mere reliance, without evidence to support the theory of defense, would give rise to a *sua sponte* duty to instruct. (See *People* v. *Gonzalez* (1983) 141 Cal.App.3d 786, 793 [190 Cal.Rptr. 554].) Accordingly, we discuss the issues in this opinion under the assumption that substantial evidence is required.

311], quoting from *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].)

■ *People* v. *Flannel, supra,* 25 Cal.3d 668, at page 684, found as an elementary proposition that a trial court should instruct on every material issue where there is " ' "any evidence deserving of any consideration whatsoever." ' " (Italics omitted.) The *Flannel* court stated if the defendant produces evidence sufficient to deserve consideration by the jury, "A trial court should not, however, measure the substantiality of the evidence by undertaking to weigh the credibility of the witnesses, a task exclusively relegated to the jury." *(Ibid.)* The *Flannel* court further warned "that 'Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused.' " *(Id.,* at p. 685.) But if the evidence is "minimal and insubstantial" the court need not instruct. *(Id.,* at p. 684.)

■ Rape requires only a general criminal intent *(People* v. *Franklin* (1976) 56 Cal.App.3d 18, 27 [128 Cal.Rptr. 94]; see *People* v. *Thornton* (1974) 11 Cal.3d 738, 765 [114 Cal.Rptr. 467, 523 P.2d 267]), but the general criminal intent must be a "wrongful intent" *(People* v. *Mayberry* (1975) 15 Cal.3d 143, 154 [125 Cal.Rptr. 745, 542 P.2d 1337]). The necessary "wrongful intent" is not the intention to violate the law but the intent to commit the forbidden act. *(People* v. *Dillon* (1926) 199 Cal. 1, 7 [248 P. 230].) Where the charge is rape, the forbidden act consists of two elements: (1) sexual penetration, and (2) overcoming the will of the victim by force or fear. Thus, the "wrongful intent" is the intent to sexually penetrate the victim and the intent to accomplish that act by force or fear. It is the latter aspect of wrongful intent with which we are concerned.

*People* v. *Mayberry, supra,* 15 Cal.3d 143 held: "If a defendant entertains a reasonable and bona fide belief that [his rape victim] voluntarily consented . . . to engage in sexual intercourse, it is apparent he does not possess the wrongful intent that is a prerequisite under Penal Code section 20[4] to a conviction of . . . rape . . . ." *(Id.,* at p. 155.) *Mayberry* concluded it was prejudicial error, *when requested by the defendant* and when supported by substantial evidence, to fail to give the "mistake of fact" instruction, i.e., an instruction which directs the jury to acquit the defendant if the jury has a reasonable doubt as to whether or not the defendant believed reasonably and in good faith the victim freely consented. *(Id.,* at pp. 157-158; see also *People* v. *Anderson* (1983) 144 Cal.App.3d 55, 62-63 [192 Cal.Rptr. 409].)

---

[4]Penal Code section 20 provides: "In every crime . . . there must exist a union, or joint operation of act and intent . . . ." "Under section 20, the defendant's wrongful intent and his physical act must concur in the sense that the act must be motivated by the intent." *(People* v. *Green* (1980) 27 Cal.3d 1, 53 [164 Cal.Rptr. 1, 609 P.2d 468].)

Because *Mayberry* addressed only the issue of the duty of the court to give a requested instruction, we must address what factors trigger the duty of a court to instruct the jury on the *Mayberry* defense without a request to do so. On this issue there is disagreement among the reported decisions.

Division Three of the First Appellate District addressed this question in *People* v. *Hampton* (1981) 118 Cal.App.3d 324 [173 Cal.Rptr. 268]. After reviewing *People* v. *Mayberry* regarding reasonable belief, and the general principles set forth in *People* v. *Flannel, supra,* 25 Cal.3d 668, and *People* v. *Sedeno, supra,* 10 Cal.3d 703, the *Hampton* court stated: "*Mayberry* compels the conclusion that, by itself, the testimony of a defendant in a rape case that the prosecutrix consented can be sufficient to require the giving of the reasonable belief instruction. Moreover, the reasonable belief in consent defense is not inconsistent with the defense of actual consent; to the contrary, the defendant who relies on the defense of consent necessarily also relies on the defense that he had a reasonable and good faith belief that there was consent. *We conclude that in every case wherein consent is offered as a defense to a charge of rape or unlawful oral copulation, the court must instruct the jury in the language of CALJIC Nos. 10.23 and 10.40.1.*" (*People* v. *Hampton, supra,* 118 Cal.App.3d at pp. 329-330, italics added.)[5]

Division Two, also of the First Appellate District, addressed the same issue in *People* v. *Romero* (1985) 171 Cal.App.3d 1149 [215 Cal.Rptr. 634], and stated: "However, while we agree that the defense of consent and the *Mayberry* defense are compatible and often will be raised together, we cannot agree with the holding in *Hampton* that the two defenses are inseparable *nor do we feel that the raising of consent necessarily compels a sua sponte instruction on the Mayberry defense.*" (*Id.,* at p. 1154, italics added.)

Before discussing the *Hampton/Romero* conflict, it is important to distinguish between the threshold issue of whether the *Mayberry* instruction must be given sua sponte, and the issue of whether the defendant can prevail on the *Mayberry* defense.

■ For the affirmative defense to prevail, the defendant has the burden of proving "he had a bona fide and reasonable belief" the victim consented. (*People* v. *Mayberry, supra,* 15 Cal.3d at p. 157.) The belief must be "reasonable" (CALJIC Nos. 10.23, 10.40.1, 10.50.1 and 4.35).[6] That is, even

---

[5]CALJIC No. 10.40.1 is similar to the reasonable belief in consent instruction articulated in CALJIC No. 10.23, and pertains specifically to oral copulation.

[6]All these instructions use the phrase "reasonable and good faith belief" except CALJIC No. 4.35 which uses the phrase "honest and reasonable belief." The phrases are not inconsistent; both convey the same meaning.

though the defendant actually believed the victim consented, was that belief reasonable under the circumstances? Also, it must be "bona fide" (*ibid.*); in other words, honestly held. "In *People* v. *Mayberry* [*supra,* 15 Cal.3d 143] . . ., the Supreme Court used the terms 'good faith,' 'genuinely,' and 'bona fide' interchangeably to require the belief be honestly held." (*People* v. *Trapps* (1984) 158 Cal.App.3d 265, 269 [204 Cal.Rptr. 541].) The concepts of a reasonable and a bona fide belief are not totally separate, for a defendant may be "aware of contrary facts which rendered such a belief wholly unreasonable, and hence in bad faith." (*People* v. *Stewart* (1976) 16 Cal.3d 133, 140 [127 Cal.Rptr. 117, 544 P.2d 1317].) Penal Code section 26[7] does not refer to either reasonableness or good faith, but the Supreme Court requires these two elements to coexist for the defense of mistake of fact to prevail. (*People* v. *Hernandez* (1964) 61 Cal.2d 529, 534-536 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092]; *People* v. *Mayberry, supra,* 15 Cal.3d at pp. 155-157.) As to the degree of proof necessary to prevail, the defendant is "only required to raise a reasonable doubt as to whether he had such a belief." (*Id.,* at p. 157.) It is the exclusive province of the jury to determine whether the defendant had a reasonable and good faith belief the victim consented.

■ Regarding the threshold issue of whether the mistake of fact instruction should be given in the first instance, it is appropriate to deal with the Attorney General's contentions on appeal which directly address this question. It is contended the appellant admitted giving a severe beating to his wife on February 11;[8] therefore, "As a matter of law, appellant could not have a reasonable belief that [his wife] consented to sexual intercourse after she was almost killed by the appellant on February 11, 1981." The other contention is similar, namely, the charge of attempted penetration with a foreign object (a canine penis)[9] is such a "depraved, degrading type of assault" that it is "inherently incredible" to believe that after the severe beating the appellant reasonably believed his wife "consented to this re-

---

[7]Penal Code section 26 provides in part: "All persons are capable of committing crimes except those belonging to the following classes: . . . [¶] Three—Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent."

[8]Even though the beating was alleged in the information to have occurred on February 11, it appears from the testimony of both the wife and appellant it occurred after a charged spousal rape offense occurring on February 13, and on the same calendar day but prior to the incident with the dog, which formed the basis of the charge of attempted penetration with a foreign object. Although this dilutes the Attorney General's argument with respect to three charged spousal rape offenses occurring before the February 13 beating, it strengthens the argument as to the dog incident and the February 15 charge of spousal rape.

[9]Although Penal Code section 289, subdivision (c) specifically excludes "a sexual organ" from the definition of a "foreign object," it was not contended below or on appeal that a dog's sexual organ, therefore, is not a "foreign object." Accordingly, we do not address this issue, nor need we in light of our decision.

volting abuse." During trial appellant repeatedly asserted that his wife was a willing participant in all the charged offenses.

The answer to the Attorney General's contentions is contained in *People v. Modesto* (1963) 59 Cal.2d 722 [31 Cal.Rptr. 225, 382 P.2d 33]: " '*However incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true.*' " (*Id.*, at p. 729, quoting *People* v. *Carmen* (1951) 36 Cal.2d 768, 772-773 [228 P.2d 281], italics original.) We agree with the Attorney General's assertion that "reasonableness" is judged by objective standards and, in this case, the appellant's testimony concerning his wife's alleged consent could be characterized as unreasonable or incredible. Nevertheless, as stated above, reasonableness and good faith are questions the jury must resolve, and resolve in defendant's favor if he is to prevail. On the threshold issue of whether the *Mayberry* instruction shall be given, the court would err by relegating the responsibility of determining the reasonableness, good faith or credibility of defendant's assertions exclusively to itself. Again, as stated in *Modesto*, " '*The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon.*' " (*People* v. *Modesto, supra,* 59 Cal.2d at p. 729, quoting *People* v. *Carmen, supra,* 36 Cal.2d at pp. 772-773, italics original.) The Attorney General's ·contention that we should declare, as a matter of law, the appellant's assertions are unreasonable is, in reality, a request that we declare the appellant's assertions to be incredible as a matter of law. The fact that evidence may be incredible, or is not of a character to inspire belief, does not authorize the refusal of an instruction based thereon, for that is a question within the exclusive province of the jury. (*People* v. *Flannel, supra,* 25 Cal.3d at p. 684.)

As to the Attorney General's argument the court may "as a matter of law" determine appellant's testimony in this case was so inherently unreasonable the sua sponte duty to instruct did not arise, citing *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826], we disagree. Indeed, a court properly may determine as a matter of law there was no " " "material issue" ' " presented by the evidence, because there was not " " "any evidence deserving of any consideration whatsoever" ' " " or there was " 'no evidence worthy of consideration to the contrary.' " (*Id.*, at p. 556, quoting in part from *People* v. *Thornton, supra,* 11 Cal.3d at pp. 768-769, fn. 20.) The *Garcia* decision also cites *People* v. *Cantrell* (1973) 8 Cal.3d 672 [105 Cal.Rptr. 792, 504 P.2d 1256], along with *Thornton,* as the two decisions which relax the rigidity of the *Modesto* per se reversal rule. (*People* v. *Garcia, supra,* 36 Cal.3d at p. 555.) The holdings of these cases are commonly referred to as the "*Cantrell-Thornton* exception." (*Id.*, at p. 556.) The *Cantrell-Thornton* exception, however, does not

provide that evidence may be disregarded because it appears to be unreasonable or incredible. The concept of *no* evidence worthy of consideration in *Thornton* is entirely different from the concept in the case at bar of *substantial* evidence. Where there is substantial evidence of a *Mayberry* defense, the court cannot "as a matter of law" reject this theory simply because it appears to be unreasonable or incredible. (See *People v. Ramos* (1984) 37 Cal.3d 136, 149 [207 Cal.Rptr. 800, 689 P.2d 430].)

 In addition to the existence of substantial evidence, the other prong of the threshold issue in determining whether to give the *Mayberry* instruction sua sponte, is a determination that the instruction is not "inconsistent with the defendant's theory of the case." (*People v. Sedeno, supra,* 10 Cal.3d at p. 716.) For example, if the defendant's theory is one of mistaken identity, the giving of an instruction concerning the defendant's belief in the victim's consent sua sponte, much less over the defendant's objection, clearly would constitute "potential prejudice." (*Ibid.*) This is not the situation below. Appellant never denied his active participation in the offenses; hence, mistake of fact was not inconsistent with his theory of defense, namely, consent. (*People v. Hampton, supra,* 118 Cal.App.3d at p. 329.)

With regard to this threshold issue, it is significant that in *People v. Rivera* (1984) 157 Cal.App.3d 736 [203 Cal.Rptr. 842], and in *People v. Hampton, supra,* 118 Cal.App.3d 324, it was held there was a sua sponte duty to give the *Mayberry* instruction. In both *Hampton* and *Rivera,* as in the instant case, the defendant himself testified the victim voluntarily consented to the sexual advances. A precise understanding of why the defendant's "consent" testimony is significant is helpful in analyzing this threshold issue. In a rape trial where the defendant himself testifies, his "consent" testimony normally will fall into two categories: out-of-court statements of the victim and the defendant's observations of the victim's conduct. When a defendant testifies the victim said "I consent," the evidence is relevant for the specific nonhearsay purpose of proving the defendant had reason to believe the victim consented (see *People v. Duran* (1976) 16 Cal.3d 282, 295 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1]) and for the additional purpose of proving the victim consented.[10] When a defendant de-

---

[10]Proof of the victim's consent by her out-of-court statement indicating consent is admissible, under the prevailing theory, as a nonhearsay "operative fact." (*People v. Nelson* (1985) 166 Cal.App.3d 1209, 1214-1215 [212 Cal.Rptr. 799]; 1 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) §§ 1.1, 1.6, pp. 10, 82-83; McCormick on Evidence (2d ed., 1978 pocket supp.) § 294, p. 87, fn. 60.) To the contrary is *People v. Donnell* (1975) 52 Cal.App.3d 762, 772 [125 Cal.Rptr. 310] (criticized by Jefferson, *op. cit. supra*) holding that words of consent are admissible to prove the state of mind of the declarant pursuant to Evidence Code section 1250. We note also if the defendant's testimony concerning the victim's statement is inconsistent with the victim's testimony, such evidence may be admissible pursuant to Evidence Code section 1235 (prior inconsistent statement); additionally, it may be admissible pursuant to Evidence Code section 1241 (explanation of declarant's contemporaneous equivocal conduct).

scribes noncommunicative conduct by the victim from which consent is inferred, the testimony is relevant to prove actual consent and, also, to prove the defendant had reason to believe the victim consented. The effect of either of these two categories of evidence is to raise two theories of defense simultaneously: the defense of actual consent, and the defense of defendant's belief the victim consented.

If it is a defense to a crime the defendant entertained a good faith and reasonable belief the victim consented, and the defendant testifies the victim consented, then unless the relevant inference derived from that testimony, namely, the defendant believed the victim consented, is not deserving of any consideration whatever, the court must give the *Mayberry* instruction to the jury sua sponte, provided that instruction is not inconsistent with the defendant's theory of defense. This is true even though the defendant's testimony appears unreasonable or does not inspire belief.[11]

Keeping in mind the foregoing discussion, we return now to the *Romero/ Hampton* conflict. The *Romero* opinion correctly notes the *Mayberry* court never addressed the sua sponte issue because in *Mayberry* the mistake of fact instruction was requested. Likewise, in *People* v. *Anderson, supra,* 144 Cal.App.3d 55, where we held it was prejudicial error to fail to give the *Mayberry* instruction, the sua sponte issue was not addressed, because the *Mayberry* instruction was requested.[12]

In *People* v. *Romero, supra,* 171 Cal.App.3d 1149, the defendant did not testify. It was stipulated, however, that "at the time of his [the defendant's] arrest [he] told the police he had not forced Mrs. M. to engage in sex with him, 'we just had oral sex and drank a beer. She said it was good.' "[13] (*Id.,* at p. 1153.) The appellate court noted the record was "devoid" of evidence which might have caused the defendant "to mistakenly believe that she [the victim] consented to have sex with him." (*Id.,* at p. 1156.) In addition, we note there was no express statement by the defendant the victim consented;

---

[11]The inference of belief in consent may not be deserving of consideration by the jury if, for example, the defendant clearly admits that although the victim said she consented he did not believe her, or otherwise concedes the issue. No doubt there are other examples. Thus, the linchpin in each case must be a careful examination of the record for the existence of *substantial evidence* not in conflict with the theory of defense.

[12]The use note to CALJIC No. 10.23 states "This instruction may be used even if victim is under 18 years of age," citing *People* v. *Anderson, supra.* This is somewhat misleading because it implies that CALJIC No. 10.23 could be used in cases where consent by the victim is not a defense. The use note should state: "Where the victim is a minor, but the charges are not based upon minority, this instruction must be given if requested and supported by evidence deserving of consideration by the jury. *People* v. *Anderson* (1983) 144 Cal.App.3d 55." (See fn. 16, *post.*)

[13]The only other defense evidence was produced by defendant's sister who testified that a woman who "resembled" the victim was in defendant's house that same night.

rather, his statement was "he had not forced" the victim to have sex with him. The *Romero* court correctly held, in the context of such evidence, that a *Mayberry* instruction was not required.

We agree with *Romero* that *Hampton* must be viewed in its factual setting. In *Hampton* (as in *Rivera*) there arose a sua sponte duty to instruct pursuant to *Mayberry,* because there was substantial evidence of the mistake of fact defense. As in *Romero,* there are indeed instances in which the defense of consent is raised, but the defense of mistake of fact does not merit consideration by a jury. In *Romero,* the introduction of a stipulated out-of-court statement deprived the jury of its ability to judge the credibility of the defendant by his demeanor on the witness stand; the jury could not judge the character and quality of his testimony, or his ability to remember or to communicate. (See CALJIC No. 2.20.) Thus, the *Romero* jury was deprived of essential tools by which it could determine whether the defendant's alleged belief was honestly held or reasonable. Furthermore, in *Romero* the defendant's statement was so equivocal it was impossible to determine what, if anything, the defendant actually believed.

■ *Romero* stresses the importance of equivocal[14] conduct by the victim which "reasonably could be misunderstood by the defendant." (*People* v. *Romero, supra,* 171 Cal.App.3d at p. 1156.) We agree that equivocal conduct by the victim is an example of the type of evidence which may give rise to the *Mayberry* defense. But insofar as *Romero* states "A defendant relying on a *Mayberry* defense *must* produce some evidence of equivocal conduct by the victim which led him to reasonably believe that there was consent where in fact there was none" (*People* v. *Romero, supra,* 171 Cal.App.3d at p. 1156, italics added), we disagree.

*People* v. *Mayberry, supra,* 15 Cal.3d at page 156 stated "In addition" the victim herself provided testimony supporting the requested instruction, namely, her behavior was "equivocal." *People* v. *Hampton, supra,* 118 Cal.App.3d at page 329 interprets this to mean that in *Mayberry* there was evidence of equivocal behavior which "provided *additional* support" for the giving of the mistake of fact instruction. (*Id.,* at pp. 329-330.) In this respect we agree with the *Hampton* analysis of *Mayberry.* If it is asserted that equivocal conduct is the sine qua non for determining whether there is "some evidence 'deserving of . . . consideration'" for the jury, we find no support for that position in case law. In fact, the adoption of such a rule would lead to error.

---

[14]"Equivocal" is defined by Webster's New World Dictionary (2d ed. 1982) page 474 as follows: "1. that can have more than one interpretation; having two or more meanings; purposely vague, misleading, or ambiguous [an *equivocal* reply] 2. uncertain; undecided; doubtful [an *equivocal* outcome] 3. suspicious; questionable [*equivocal* conduct]."

For example, if the defendant testifies the victim unequivocally consented, that is, there was nothing uncertain, undecided or misleading regarding the victim's alleged consent, and assuming this was the only evidence before the court, pursuant to the *Romero* rule a court would not give the *Mayberry* instruction because there was not some evidence of equivocal conduct. Clearly this would constitute error.

The question is whether there is substantial evidence to support the defendant's *belief* the victim consented. Proof of unequivocal consent by the victim actually constitutes stronger evidence in support of a defendant's belief, and the reasonableness of that belief, than evidence of equivocal conduct. We would agree, however, with the *Romero* opinion's insistence on at least some evidence of equivocal conduct by the victim where, in the context of that case, there was no evidence of unequivocal consent, much less evidence of what, if anything, the defendant believed.

The answer to the threshold question of whether the mistake of fact instruction must be given sua sponte is not found in any specific formula, such as whether "consent is offered as a defense" (*Hampton*) or there is "equivocal conduct" by the victim (*Romero*), or whether the defendant does or does not take the stand, etc. In the search for certainty it is misleading to suggest there is some touchstone which determines the presence of substantial evidence which, in turn, triggers a sua sponte duty to instruct. In some cases, as in *Romero,* there will be evidence not "deserving of . . . consideration." This is not solely because of a lack of evidence of equivocal conduct, but because, for the reasons indicated above, the evidence in the particular case did not rise to the level of "substantial evidence."[15]

■ Similarly, we choose not to follow the language in *Hampton* that in "every case" wherein consent is "offered" as a defense, the court must instruct the jury pursuant to *Mayberry*. The mere offer of the defense of consent clearly is not synonymous with substantial evidence of mistake of fact. This point is illustrated by *People* v. *Gonzalez, supra,* 141 Cal.App.3d 786, which held CALJIC No. 10.23 need not be given sua sponte where

---

[15]By our holding that evidence of equivocal conduct by the victim is not the sole evidentiary factor to be used in determining the existence of the mistake of fact defense, we are not unmindful of footnotes 6 and 7 to the opinion in *People* v. *Tassell* (1984) 36 Cal.3d 77, 88 [201 Cal.Rptr. 567, 679 P.2d 1]. In *Tassell,* the defendant was charged with kidnapping, rape and forcible oral copulation. The issue was whether evidence of convictions for two prior sex offenses was admissible. The Supreme Court held they were not, because they were not relevant to any issue in the case. The court notes although the defendant testified the victim consented, the defendant's intent was not in issue because the defendant intended intercourse and there was nothing "equivocal" about the defendant's intent (such as touching the victim by mistake or with innocent intent). Equivocal *intent* on the part of a defendant clearly is distinguishable from equivocal *behavior* on the part of a victim. Thus, the *Tassell* holding does not alter our decision in this case.

the defendant did not testify and the "only 'evidence' concerning his belief was his counsel's theory [mistake of fact] in closing argument." (*Id.*, at p. 793.)

 In the case at bar appellant's reasonable belief in the victim's consent[16] was supported by substantial evidence. It is clear nothing more than the testimony of a defendant may be sufficient to trigger the duty to instruct sua sponte on the defense of a bona fide belief in the victim's consent. (*People* v. *Hampton, supra,* 118 Cal.App.3d 324, 329, interpreting *People* v. *Mayberry, supra,* 15 Cal.3d 143; *People* v. *Rivera, supra,* 157 Cal.App.3d 736, 741.) In the instant case appellant never denied the events, which formed the crux of the state's charges, took place. Rather, appellant consistently contended that his wife consented or agreed to each act. Appellant testified throughout his direct examination that his wife said "I'm willing to," "I'm willing to continue doing it," "You don't have to worry about it . . . I can handle it," and "She agreed to it." Appellant described conduct by his wife indicating consent. The testimony of appellant clearly supported the inference he believed his wife consented to the acts of intercourse and to the act of penetration by a foreign object. That inference, in turn, constituted evidence deserving of consideration by a jury.

In addition to appellant's testimony, there was circumstantial evidence from which the jury could infer appellant believed his wife consented. There was testimony appellant's wife sent approximately 18 letters to appellant reiterating a theme of love for appellant and a fear that appellant would leave her. There was testimony on many occasions appellant's wife orally professed her love for appellant. There was testimony appellant's wife carried a loaded pistol in her purse at all times (and, presumably, could have threatened appellant with it and made her way to neighbors or the police). Three witnesses testified, in effect, appellant's wife was sexually promiscuous.

Accordingly we must conclude, under these facts, there was evidence worthy of consideration by a jury that appellant believed his wife consented. Therefore, the trial court was required to give the mistake of fact instruction in the language of CALJIC No. 10.23 sua sponte. (*People* v. *Hampton,*

---

[16]In the case before us lack of consent is an element of the charged offense and, hence, consent is a "defense." In those criminal charges where consent of a minor victim is not a defense (e.g., violation of Pen. Code, § 261.5, unlawful sexual intercourse; see *People* v. *Hernandez, supra,* 61 Cal.2d 529, 531; CALJIC No. 10.10), the defendant's belief the minor consented, ipso facto, is irrelevant. Distinguished is the case where the minor victim is age 14 years or older, and the defense of mistake as to *age* may be applicable. (See *People* v. *Olsen* (1984) 36 Cal.3d 638 [205 Cal.Rptr. 492, 685 P.2d 52] and cases cited therein; CALJIC No. 10.11.) Also to be distinguished is mistake of law, which is not a defense. (See *People* v. *Snyder* (1982) 32 Cal.3d 590, 592-593 [186 Cal.Rptr. 485, 652 P.2d 42].)

*supra,* 118 Cal.App.3d 324; *People* v. *Rivera, supra,* 157 Cal.App.3d 736.)[17]

### (b) Was it reversible error?

Having determined that the failure to instruct pursuant to CALJIC No. 10.23 was error, we turn to the question of whether or not that error requires a reversal of the convictions on counts I through V.

■ In determining whether the error in omitting a required instruction on an affirmative defense is prejudicial, we must apply the rule of *People* v. *Sedeno, supra,* 10 Cal.3d at page 720. (See also *People* v. *Stewart, supra,* 16 Cal.3d at p. 141; *People* v. *Mayberry, supra,* 15 Cal.3d at pp. 157-158; *People* v. *Modesto, supra,* 59 Cal.2d at p. 730.) Such error denies the defendant the constitutional right to a jury trial on a material issue, and the denial of such a right constitutes a "miscarriage of justice" within the meaning of article VI, section 13 of the California Constitution.[18] (*People* v. *Modesto, supra,* 59 Cal.2d at p. 730.)

Despite the fact that our review of the record establishes the evidence against the appellant was overwhelming, and despite the fact that we might be convinced beyond a reasonable doubt that instructing the jury pursuant to CALJIC No. 10.23 would not have resulted in a more favorable verdict, we are required by the doctrine of stare decisis to follow the decisions of our Supreme Court when those decisions have given us clear and unequivocal rules to follow. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Thus, we are not free to examine the entire cause and determine if the error "was harmless beyond a reasonable doubt." (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 711, 87 S.Ct. 824, 24 A.L.R.3d 1065], where there is error in a criminal case of federal constitutional dimensions.) Much less are we free to determine, under a more forgiving standard, whether it was reasonably probable the error was harmless. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836-837 [299 P.2d 243], where the wrong instruction is given.)[19]

---

[17]As explained in *People* v. *Guthreau* (1980) 102 Cal.App.3d 436, 442 [162 Cal.Rptr. 376], the proper instruction where the charge is rape is CALJIC No. 10.23; CALJIC No. 4.35 (mistake of fact as a defense) need not also be given.

[18]This section provides a judgment will not be set aside "on the ground of misdirection of the jury" unless after an examination of the entire cause the error resulted in "a miscarriage of justice."

[19]Compare, however, *People* v. *Murtishaw* (1981) 29 Cal.3d 733, 764-765 [175 Cal.Rptr. 738, 631 P.2d 446], where the *Watson* standard was applied when instructions were confusing and contradictory and there was an erroneous failure to instruct concerning the type of malice which could support a conviction.

In the absence of the defendant conceding the issue, the only formula available on appeal to cure an error arising from failure to instruct on an affirmative defense supported by substantial evidence is set forth in *People v. Stewart, supra,* 16 Cal.3d 133, 141, quoting in part from *Sedeno*: "[A] failure to instruct where there is a duty to do so can be cured if it is shown that 'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions.'"

In this case, no other instruction was given concerning the defense of appellant's reasonable and good faith belief in the victim's consent, although the defense of actual consent was presented to the jury and rejected as indicated by the verdict. As stated by this court in *People v. Anderson, supra,* 144 Cal.App.3d 55, 63: "The only analysis permitted is to determine if the omitted issue was decided adversely to appellant by the jury in another context. [Citation.] . . . [¶] While the jury decided the issue of actual consent adversely to appellant, that determination does not necessarily decide the issue of whether appellant reasonably believed the victims consented. The two defenses are separate. . . . As appellant notes, the jury could not have implicitly rejected the reasonable belief defense when they were never asked to consider it. [Citation.]"

Accordingly, we must find the error was prejudicial.

### (c) Summary

██ The net result of the foregoing discussion can be distilled into two basic rules: (1) If it is a defense to a crime the defendant entertained a good faith and reasonable belief the victim consented to the act,[20] and that defense is supported by evidence worthy of consideration by a jury, even though

---

[20]Although our ruling is based only upon the defense before us, we note the affirmative defense of mistake of fact is founded upon both sections 20 and 26 of the Penal Code, and, therefore, has extremely broad application. "'The effect of mistake, of course, is to negate the element of intent.'" (*People v. Rivera, supra,* 157 Cal.App.3d at p. 742, quoting from *People v. Scott* (1983) 146 Cal.App.3d 823, 833 [194 Cal.Rptr. 633].) The *Rivera* case held that the defense of reasonable belief in the victim's consent to the assault component of a charge of assault with intent to commit rape—the general intent component—requires a *Mayberry*-type instruction where that defense was supported by substantial evidence; and also noting that mistake of fact may negate a specific intent to rape. *People v. Mayberry, supra,* 15 Cal.3d 143 warns: "'So basic is this requirement [of a union of act and wrongful intent] that it is an *invariable element of every crime unless excluded expressly or by necessary implication.*'" (*Id.,* at p. 154, quoting from *People v. Vogel* (1956) 46 Cal.2d 798, 801 [299 P.2d 850], italics added.) The *Vogel* case, in footnote 2, at page 801, notes the possible exception of offenses involving "light penalties and no moral obloquy or damage to reputation" such as certain "traffic and food and drug regulations" where the "primary purpose of the statutes is regulation rather than punishment or correction." (See also fn. 16, *ante.*)

such evidence may not inspire belief, is incredible, or the evidence is circumstantial or is based upon the defendant's testimony alone, the court must give the mistake of fact instruction to the jury sua sponte if that instruction is not inconsistent with the defendant's theory of defense; and (2) the failure to so instruct is reversible error unless the mistake of fact issue was resolved adversely to the defendant under another, proper instruction or unless the defendant has conceded that issue.[21]

Accordingly, we are compelled to reverse the judgment of conviction on counts I through V.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL*

. . . . . . . . . . . . . . . . . . . . .

## CONCLUSION

Accordingly, we reverse the judgment of conviction on count I (attempted penetration with a foreign object) and counts II through V (spousal rape) for failure of the court to give CALJIC No. 10.23 sua sponte and remand for retrial. We affirm the judgment of conviction on count VI (assault by means of force likely to produce great bodily injury), but remand the case for resentencing on count VI.[23]

Hanson (P. D.), Acting P. J., and Hamlin, J., concurred.

A petition for a rehearing was denied February 19, 1986, and respondent's petition for review by the Supreme Court was denied May 22, 1986. Bird, C. J., was of the opinion that the petition should be granted.

---

[21]Concession of an issue is an exception to the strict rule of reversal. (*People* v. *Garcia, supra,* 36 Cal.3d at pp. 554-555, relying upon the plurality opinion in *Connecticut* v. *Johnson* (1983) 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969].) Because the rule stated above assumes the existence of substantial evidence in support of the defense, the *Cantrell-Thornton* exception is not applicable. Also, we specifically include the *Sedeno* exception (adverse resolution by another proper instruction). There are no other exceptions enumerated in *Garcia,* nor in *People* v. *Ramos, supra,* 37 Cal.3d at pages 146-149.

*See footnote on page 1134, *ante.*

[23]As to count VI, the court imposed a consecutive sentence of one-third of the middle term of three years, namely, one year. Count II was used as the base term.