Filed 3/25/14  P. v. Matheu CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>BYRON MATHEU,<br><br>　　　　Defendant and Appellant. | B248237<br><br>(Los Angeles County<br>Super. Ct. No. MA028351) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Affirmed.

Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and John Yang Deputy Attorneys General for Plaintiff and Respondent.

Appellant Byron Matheu was convicted of the first degree murder of Arthur Morua in violation of Penal Code[1] section 187, subdivision (a). The jury found true the allegations that appellant used a firearm in the commission of the murder within the meaning of section 12022.53, subdivisions (b) through (i) and committed the offense for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1). The trial court found true the allegations that appellant had suffered a prior serious felony conviction within the meaning of section 667, subdivision (a)(1) and sections 667, subdivisions (b) through (i) and 1170.12 (the "three strikes" law). The trial court sentenced appellant to a total term of 80 years to life in state prison.

Appellant appeals, contending the trial court erred prejudicially in failing to instruct the jury, sua sponte, on perfect defense of another and voluntary manslaughter based on imperfect defense of another. In the alternative, he contends his counsel's failure to request those instructions constituted ineffective assistance of counsel. We affirm the judgment of conviction.


Facts

In 2004, Arthur Morua lived with his girlfriend Julie Corkum and her daughter Vanessa Barahona in the front unit of a house on Elm Avenue. Helen lived in a back unit on the property. Helen was dating appellant, who was a member of the Varrio Nueva Estrada gang ("VNE"). Kathleen Carreon, Jodi Easton and Helena Kono also lived on the property.

On the morning of February 17, 2004, Morua called appellant out of Helen's house. Morua was angry that appellant was selling drugs to Corkum. Appellant said that he thought Morua was aware of the transactions.

Appellant returned to Helen's home and called Richard Garcia, a fellow member of VNE. Appellant's statements during the call were overheard by Carreon, Easton and Kono, who gave slightly differing accounts of those statements. According to Carreon,

[1]  All further statutory references are to the Penal Code unless otherwise specified.

appellant told Garcia to bring a strap, that is a gun, to the house. According to Easton, appellant told Garcia to bring a gun because he was going to kill Morua. Appellant said that Morua had threatened to knock his teeth down his throat, but "We'll see whose teeth get knocked down their throat. Bring the gun." According to Kono, appellant told Garcia to "bring a strap."

Appellant left the house for about half an hour. When he returned, he passed by Kono and told her, "I'm here. Tell [Morua] that I'm waiting for him."

Appellant and Morua met up in the backyard. Barahona was present when the fight broke out. According to her, Morua threw the first punch. After Morua's first or second punch, appellant fell to the ground. Morua continued punching appellant. Garcia rushed in and knocked Morua off appellant, and Morua then began fighting with Garcia. Appellant backed off and stood up. Morua was "bent backwards over" a chair and exchanging blows with Garcia when appellant pulled out a gun and shot Morua in the head. Morua was not trying to get at appellant when appellant fired his gun.

Carreon saw the fight through a window. She saw Morua approach appellant in the yard, then punch appellant. A fight ensued between Morua, who was about six feet, four inches tall and weighed 209 pounds, and appellant, who was about five feet two inches tall and weighed about 145 pounds. Carreon said appellant was crouched down and being punched by Morua when he pulled out a gun and shot Morua. Appellant then fled. Carreon estimated the two men fought for about two minutes before the shooting. Garcia was not involved in the fight.

Easton was inside when the fight started. She heard yelling, then as she went outside she heard a shot fired. She saw Morua bleeding from his head, and appellant walking away. Garcia told Easton he was not the one who shot Morua.

Morua died from the gunshot wound to his head. The bullet entered the top of the head at a downward angle. Morua also received a gunshot wound to his forearm. The forearm and head wounds could have come from a single bullet or two separate bullets. A small amount of marijuana and a moderate amount of oxycodone were found in Morua's system.

Three days after the shooting, Garcia voluntarily turned himself into police. He was interviewed on February 20, 2004. A tape-recording of the interview was played for the jury. Garcia also testified at trial. The accounts were similar, but not identical.

According to Garcia, he and Rafael Espinoza, who was a fellow VNE gang member, went to appellant's house to pick him up, possibly because Helen was throwing him out of the house. In his statement to police, Garcia said that appellant asked him to bring a gun, but Garcia did not have one. At trial, Garcia testified that appellant did not ask him to bring a gun. Both in his statement to police and at trial, Garcia said that appellant always had a gun.

While Garcia was waiting for appellant, he heard appellant screaming and yelling. Garcia ran to see what was wrong and saw Morua bent over appellant, who was on his back on the ground. According to Garcia, Morua was an older gang member who no longer "banged." Morua was "socking" appellant in the face and beating him up. Appellant was screaming and there was a lot of blood coming from his head. Garcia knocked Morua off appellant, and Morua began fighting with Garcia. Garcia was able to hold his own. At one point, Morua slipped and was on one or both knees, but had an arm around Garcia, preventing Garcia from getting away. Garcia heard a shot, and Morua fell to the ground.

Garcia, Espinoza and appellant fled. Garcia and appellant drove to Arizona, stopping along the way to pick up a gun. Appellant was bleeding and had lumps on his head and a cut on his forehead. Appellant admitted that he shot Morua in the head. He told Garcia: "Ain't nobody ever going to hit him and get away with it."

Garcia left appellant in Arizona, returned to California and turned himself into police. He did not want to be a fugitive and did not believe that he did anything wrong. Garcia eventually pled guilty to being an accessory after the fact and was sentenced to eight years in prison.

Los Angeles County Sheriff's Sergeant Richard Cartmill testified at trial as a gang expert. The Varrio Nueva Estrada gang, known for the initials VNE, boasted 400 to 500 members during 2004. Their primary activities were burglary, robbery, weapons

4

possession, sale of narcotics, assault with deadly weapon, and murder. Sergeant Cartmill opined that appellant was a member of the VNE based on in-field identification cards reflecting individuals identifying appellant as a VNE member and photographs showing appellant's VNE tattoos. Richard Garcia was also a self-admitted VNE member. Rafael Espinoza was also a VNE member.

Based on a hypothetical reflecting the facts of this case, Sergeant Cartmill opined that the shooting was committed for the benefit of the VNE gang. This opinion was based on the fact that appellant invoked the typical support that could be counted on from his fellow gang members in this conflict by telling them to come to the fight and to also bring a weapon. Fellow gang members present at a scene where one gang member is engaged in a confrontation were obliged to jump into the fray and assist their fellow gang member. Also, the disrespect shown by Morua's verbal confrontation of appellant typically warranted gang retaliation to maintain the status of the gang.

Appellant did not present any defense witnesses, but relied on testimony from prosecution witnesses to make his legal arguments

Discussion

1. Defense of another

Appellant contends the trial court erred in failing to instruct the jury, sua sponte, on perfect defense of another. We see no error.

A trial court has a sua sponte duty to instruct on a defense "'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with defendant's theory of the case.' [Citations.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 157.) If the trial court "believes 'there is substantial evidence that would support a defense inconsistent with that advanced by a defendant, the court should ascertain from the defendant whether he wishes instructions on the alternative theory." (*Ibid*.)

Substantial evidence to support such an instruction "is defined as evidence which is sufficient to deserve consideration by the jury, i.e., evidence from which a jury

composed of reasonable men could have concluded that the particular facts underlying the instruction did exist." (*People v. Burnham* (1986) 176 Cal.App.3d 1134, 1139 [internal quotation marks omitted].)

We independently review a claim that a trial court erred in failing to give an instruction. (*People v. Booker* (2011) 51 Cal.4th 141, 181.)

A homicide is justified when committed in the lawful defense of another. (§ 197, subds. (1) & (3).) A person acts in perfect defense of another when he actually and reasonably believes the other person is in imminent danger of great bodily injury and the immediate use of force is necessary to defend against the threat, and when the defender uses only the force reasonably necessary to defend against the threat. (See *People v. Hernandez* (2011) 51 Cal.4th 733, 747 [elements of perfect self-defense]; *People v. Randle* (2005) 35 Cal.4th 987, 994, 998, 1000 [elements of perfect and imperfect defense of another], overruled on another ground by *People v. Chun* (2009) 45 Cal.4th 1172, 1201.)

No such substantial evidence exists here. Appellant contends that Morua's "felonious purpose to commit assault by means of force likely to produce great bodily injury continued and posed an immediate danger to Garcia and to defendant. Under these circumstances, and knowing Morua's gang background, it would be reasonable for defendant to conclude that Morua did not magically transform from a felon gang member committing felony assault to a person who was now committing only simple assault because he was now fighting defendant's defender instead of defendant himself. If anything, a rescuer would be viewed by Morua as two against one and his need to deal with Garcia like he had dealt with defendant – committing assault by means of force likely to produce great bodily injury – became even more important to Morua." Appellant describes Morua's gang background as "a gang member who had only recently been released from prison . . . and was on parole . . . and was possibly a killer based on his tear-drop tattoo. . . ."

The evidence shows Morua was much larger than appellant and only needed one or two punches to knock appellant to the ground. Morua was then able to keep appellant

6

down and continue to punch him. In contrast, Garcia and Morua were about the same size and were evenly matched, with Garcia doing slightly better in the fight than Morua. Thus, contrary to appellant's claim, the evidence showed that the nature of the assault by Morua *did* change. Even if Morua wanted to assault Garcia as forcefully as he had appellant, he was not able to do so. To the extent that appellant contends Morua's status as a "felon gang member" made Morua appear to be a serious threat to Garcia, we note Garcia was also a "felon gang member." Thus, Morua and Garcia were evenly matched in this way as well.

Nothing about the circumstances of the fight between Morua and Garcia gave rise to an objective need to defend Garcia with deadly force against imminent danger of death or great bodily injury. (See *People v. Enriquez* (1977) 19 Cal.3d 221, 228 [there is a "limitation on the amount of retaliatory force which may be used against an assault with fists. Such an assault does not justify the use of a deadly weapon in self-defense"], overruled on another ground in *People v. Cromer* (2001) 24 Cal.4th 889, 898.) The trial court did not err in failing to instruct the jury sua sponte on perfect defense of another.


2. Imperfect defense of another

Appellant contends the trial court erred in failing to instruct the jury, sua sponte, on the lesser included offense of voluntary manslaughter based on imperfect defense of another. We see no error.

A trial court must instruct, sua sponte, "on all theories of a lesser included offense which find substantial support in the evidence." (*People v. Breverman*, *supra*, 19 Cal.4th at p. 162.)

A person who kills in the actual but unreasonable belief in the need to protect another person from the imminent danger of death or great bodily injury is guilty of voluntary manslaughter. (*People v. Randle, supra,* 35 Cal.4th at pp. 990, 996.) This crime is a lesser included offense of murder. (*Id.* at p. 994.)

Appellant relies on the argument he made in support of perfect defense of another to support his claim that the evidence also warranted an instruction in imperfect defense

7

of another. As we discuss, *supra*, the circumstances of the fight do not show an objective need to defend Garcia with deadly force against imminent danger of death or great bodily injury. There is no evidence that appellant actually but unreasonably believed he needed to defend Garcia from an imminent threat of great bodily injury or death. Appellant did not make any statements, at the time of the fight or later, which would indicate he held such a belief. Although appellant suggests on appeal that he believed Morua was an especially dangerous gang member who wanted to seriously injure Garcia, appellant's belief about Morua's character is of limited relevance. In order for imperfect self-defense of another to apply, appellant must have subjectively believed not merely that Morua wanted to inflict death or great bodily injury on Garcia, but that Morua was about to do so. There is nothing to show that appellant actually had such a belief.

Since there was no evidence from which a reasonable jury could have inferred that appellant subjectively believed he needed to defend Garcia from great bodily injury or death, the trial court did not err in failing to instruct sua sponte on voluntary manslaughter based on imperfect defense of another.

### 3. Ineffective assistance of counsel

Appellant contends that assuming the trial court did not have a sua sponte duty to instruct on the defense of another, his counsel was ineffective in failing to request instructions on perfect defense of another and voluntary manslaughter based on imperfect self-defense.

Appellant has the burden of proving ineffective assistance of counsel. (*People v. Pope* (1979) 23 Cal.3d 412, 425.) In order to establish such a claim, appellant must show that his counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's error, a different result would have been reasonably probable. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.)

8

"When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for the counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation." (*People v. Anderson* (2001) 25 Cal.4th 543, 569.)

"[W]e accord great deference to counsel's tactical decisions' [citation], and we have explained that "courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [citation]." (*People v. Stanley* (2006) 39 Cal.4th 913, 954.)

Here, trial counsel might reasonably have believed that appellant's claim of self-defense was more convincing than a claim of defense of another would be, given the disparity in size between appellant and Morua, and may further have believed that adding a claim of defense of Garcia, who was evenly matched with Morua, would weaken appellant's self-defense claim. Such a decision is a matter of trial tactics, and is particularly within the province of trial counsel. Alternatively, trial counsel might have been in possession of facts which precluded arguing defense of another. Thus there could easily be a satisfactory explanation for counsel's failure to request instructions on defense of another. Appellant's claim fails.

Further, we see no reasonable probability of a more favorable result if counsel had requested and received instructions on defense of another. Appellant shot Morua while Morua and Garcia were fighting. Since appellant was in no immediate physical danger while Garcia and Morua were fighting, appellant could only have acted in self-defense if he believed, reasonably or not, that Morua was about to overpower Garcia and resume his attack on appellant. The jury rejected appellant's self-defense claims and thus implicitly rejected the idea that appellant believed Morua was about to overpower Garcia. Thus, if the jury had been instructed on defense of another, there is no reasonable probability the jury would have found appellant believed he needed to defend Garcia.

4.  Cumulative error

Appellant contends that even if the omission of each instruction was not prejudicial when considered separately, they were cumulatively prejudicial.  We do not agree.  The trial court did not err in failing to give the instructions, and so there was no cumulative error.

Disposition

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MINK, J.[*]

We concur:

TURNER, P. J.

KRIEGLER, J.

---

[*]     Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10