[No. A033540. First Dist., Div. Four. June 30, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL RAY CASTILLO, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1] Parts A and D (only) are not published, as they do not meet the standards for publication contained in rule 976(b), California Rules of Court.

COUNSEL

Manuel E. Nestle, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Martin S. Kaye and Gerald A. Engler, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

POCHÉ, J.—Defendant Daniel Ray Castillo appeals from a judgment of conviction entered upon jury verdicts finding him guilty of forcible rape (Pen. Code, § 261, subd. (2)),[2] penetration by a foreign object (§ 289, subd. (a)), and upon a finding that he came within the provisions of sections 667 and 667.5 by virtue of having been convicted previously of a serious felony (§ 288a).[3] The primary contentions on appeal concern (a) the sufficiency of the evidence to support the conviction of penetration by a foreign object; (b) the exclusion of evidence showing that defendant is mildly retarded which was offered as evidence of a reasonable good faith belief that the victim had consented to the sexual acts; (c) the trial court's failure to instruct on that defense sua sponte with respect to the charge of penetration by a foreign object; and (d) the imposition of full consecutive sentences. Finding no reversible error we affirm.

### THE EVIDENCE

On the night of July 30, 1984, defendant and William Evans visited Evan's girlfriend, Hisa, at her home in Napa. Evans had introduced defendant to Hisa on a previous occasion.

During the course of the evening Hisa and Evans consumed some rum. Evans consumed a great deal of rum and became intoxicated. Hisa claimed that Evans forced her to drink rum by holding the bottle to her mouth. Evans denied forcing Hisa to drink.

Hisa testified that during the evening she went into her bedroom. She may or may not have had sexual intercourse with William that evening.[4] Defendant came into her bedroom and they had an argument as to whether Evans had another girlfriend. She called defendant "a liar" and swore at him. Defendant slapped her in return. Evans came in, told them not to fight, then returned to the living room.

---

[2] Unless otherwise indicated, all statutory references are to the Penal Code.

[3] Defendant was found not guilty of the charge of forcible sodomy. (§ 286, subd. (c).)

[4] Her testimony varied greatly on this point. She testified no intercourse occurred, that it did occur, and that it did occur but not the same night as the charged offenses. She told an investigating officer that no intercourse had occurred but later said it had.

Hisa also stated that she and Evans quarreled in the bedroom, and when Evans left she went to sleep. At some point thereafter, defendant entered the bedroom, and rolled her from her stomach to her back. He removed her underwear and touched the inside of her vagina with his finger. She hit defendant, swore at him and "bit at him," but to no avail because he was sitting on top of her and holding her right wrist. She told defendant to leave the bedroom, but he refused. He then engaged in an act of vaginal intercourse, and placed his penis in her "backside." While he was still sitting on top of her, she told defendant that she was going to telephone the police, but he told her not to. Defendant spent the rest of the evening in her bed. She did not consent to having sexual relations with defendant.

The next morning, she arose about 6:30 a.m., showered, and got ready for work. Before she left, she kissed defendant on the cheek in front of Evans, because she was mad at Evans for not sleeping with her. At work, she told her supervisor what had happened.

According to Evans, defendant and he spent two nights with Hisa. During the second evening, he and Hisa engaged in sexual intercourse in the bedroom. Later, he left the bedroom and defendant went inside. Before Evans "passed out" in the other room, he saw defendant shake Hisa and push her onto the bed. When he awoke in the morning, he saw defendant open the door and exit from the bedroom. On their way to work Evans asked defendant whether he had engaged in sexual intercourse with Hisa, but at trial he could not remember defendant's answer. Evans told Napa Police Detective Albert Bahn, however, that defendant admitted having sex with Hisa. Evans denied having asked Hisa to engage in sex with defendant.

Tim Montesonti, Hisa's supervisor, noticed that when Hisa arrived at work, her face was red and puffy and she was crying. Later when she burst out crying at her work area, he asked what was wrong, and Hisa asked to speak in private. In his office, Hisa told Montesonti that Evans and defendant had come to her house but they would not leave. Upon further questioning, she stated that she had intercourse with defendant but did not "want him to." She did not telephone the police because Evans was sleeping by the telephone and she was afraid he would prevent her from calling. Montesonti telephoned the police.

Napa Police Officer John Kostelac spoke with Hisa shortly after 8 a.m. Hisa told Kostelac that defendant and Evans came to her house and defendant had said that he wanted to have sex with her. Evans told her to do so. She did not want to and asked them to leave. While they were still there, she went to bed. Defendant entered her bedroom and repeated his desire to have intercourse. When she refused, he grabbed her, rolled her over and removed

her underwear. She struggled but stopped for fear that he would hurt her. Holding her wrists, he sodomized and raped her while she was lying on her back. When Hisa said that she intended to telephone the police, defendant grabbed her and threw her back on the bed.

Hisa was taken to a local hospital and examined by Dr. Graham Shaw. He found no evidence of bruising or scraping on the body, and no evidence of vaginal or anal injury. Spermatozoa was found on vagina smears, and semen was found on her underwear. The criminalist testified that the semen could have been produced by either defendant or Evans. No testable material resulted from rectal swabs. Examination of a pubic hair found on Hisa found many similarities with defendant's pubic hair, and none with the pubic hair of Evans or Hisa. The criminalist thought it possible, however, that the public hair could have come from another person.

Officer Kostelac interviewed defendant at his workplace. Defendant stated that he and Evans had gone to Hisa's place the evening before. Hisa and Evans drank rum and Evans became intoxicated. Hisa asked defendant to sleep in bed with her, which he did, but he did not have sexual relations with her.

Rosalinda Moralas testified that her friend Hisa telephoned about 6 a.m. that morning.[5] Crying, Hisa said that defendant had forced her to have sex. Hisa said she had struggled, but that defendant had slapped her and forced her submission.

REVIEW

A.[6]

. . . . . . . . . . . . . . . . . . . . .

B.

■ On relevancy grounds, the trial court excluded expert evidence proffered by the defense of defendant's mild retardation. Defendant claims this was error.

The defense sought to elicit from their expert that defendant had scored a 69 on an I.Q. test, and that such a score reflected mild retardation. Such

[5] Hisa testified that this conversation occurred later that evening.
[6] See footnote 1, *ante,* page 119.

evidence was proffered on many grounds, but the only one raised on appeal is the ground that it supported a defense of a reasonable good faith belief that the victim had consented to the sexual acts. We conclude that for this purpose the evidence was irrelevant and therefore was properly excluded.

Under *People* v. *Mayberry* (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337], a defendant who entertains both a reasonable and bona fide belief that the victim voluntarily consents to engage in the sexual offense does not have the necessary wrongful intent to be convicted of the crime. (*Id.* at p. 155; see also *People* v. *Rodriguez* (1986) 42 Cal.3d 1005, 1018 [232 Cal.Rptr. 132, 728 P.2d 202]; *People* v. *Burnham* (1986) 176 Cal.App.3d 1134, 1140 [222 Cal.Rptr. 630].) The rationale is simple: one who labors under a mistake of fact that negates the existence of any criminal intent cannot be convicted of a crime. (*Ibid.*; accord *People* v. *Romero* (1985) 171 Cal.App.3d 1149, 1153 [215 Cal.Rptr. 634].)

■   To prevail on the affirmative defense, the defendant must prove "he had a bona fide and reasonable belief" that the victim consented. (*People* v. *Mayberry, supra,* 15 Cal.3d at p. 157.)[7] That is, he must honestly believe the victim consented and that belief must be reasonable under the circumstances. (*People* v. *Burnham, supra,* 176 Cal.App.3d at pp. 1141-1142.) Reasonableness, of course, is an objective standard. (*Id.* at p. 1143.) While involuntary intoxication is a circumstance which may be considered in determining reasonableness (*People* v. *Scott* (1983) 146 Cal.App.3d 823, 831-832 [194 Cal.Rptr. 633]), mental illness is not. (*People* v. *Gutierrez* (1986) 180 Cal.App.3d 1076, 1083 [225 Cal.Rptr. 885], citing *People* v. *Raszler* (1985) 169 Cal.App.3d 1160, 1163-1165 [215 Cal.Rptr. 770].) Mental deprivation, in fact, never has been considered an attribute of the reasonable man. (See, e.g., *Schumann* v. *Crofoot* (1979) 43 Ore.App. 53 [602 P.2d 298, 300] [mental illness not a defense to negligent conduct]; *Greenberg* v. *McCabe* (E.D.Pa. 1978) 453 F.Supp. 765, 768, affd. 594 F.2d 854 ["in determining the reasonableness of a person's conduct, his or her illness or physical disability can be considered in defining the standard which he or she must meet but ... a mental deficiency cannot be taken into account"]; *Jolley* v. *Powell* (Fla.App. 1974) 299 So.2d 647, 649 [mentally deficient person subject to liabilty for negligent conduct]; Prosser, Law of Torts (1971 ed.) pp. 152-154; Rest.2d Torts, § 283B,[8] com. b., p. 17; Annot., Liability of

---

[7] The commentators have criticized the requirement of objective element of reasonableness for a mistake of fact defense to a specific intent crime such as rape; honest belief should be enough to negate the mens rea in their view. (See, e.g., Perkins, Criminal Law (3d ed. 1982) ch. 9B, pp. 1045-1048; LaFave & Scott, Criminal Law (1972) ch. 5, § 47, pp. 357-358; Model Pen. Code & Commentaries (1985) com. to § 2.04, pp. 267-268.) We of course are bound to follow the California Supreme Court's test for mistake of fact defense. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

[8] Section 283B of the Restatement Second of Torts reads: "Unless the actor is a child, his insanity or other mental deficiency does not relieve the actor from liability for conduct which does not conform to the standard of a reasonable man under like circumstances."

Insane Person for His Own Negligence (1973) 49 A.L.R.3d 189.) For this reason, a mistake of fact defense cannot be predicated on delusions which are the product of mental illness. (*People* v. *Gutierrez, supra,* 180 Cal.App.3d at p. 1083.) ■ We similarly hold that a mistake of fact defense cannot be predicated on beliefs that are the product of mental retardation.

■ But, assuming arguendo that evidence of mental retardation were admissible as evidence of a reasonable, good faith belief in consent, the order of exclusion in the instant case was a proper exercise of discretion under Evidence Code section 352. Here defendant's offer of proof was such that the trial court could have reasonably concluded that the confusion that would be engendered from admission of the evidence in the absence of further expert explanation outweighed the probative value of the evidence. Such a ruling is not an abuse of discretion.

## C.

■ Defendant requested and the trial court delivered instructions on the *Mayberry* defense on the charges of rape (CALJIC No. 10.23) and sodomy (CALJIC No. 10.50.1), but failed to deliver it with respect to the charge of penetration by a foreign object. Defendant contends that the trial court erred in failing to do so, sua sponte. We agree.

As the Attorney General notes, the failure on the part of the defense to request the instruction probably stems from the fact that for reasons unknown, CALJIC has not drafted a good faith belief instruction with respect to the crime of penetration by a foreign object, although the instructions exist for the crimes of rape (CALJIC No. 10.23), sodomy (CALJIC No. 10.50.1), and oral copulation (CALJIC No. 10.40.1). That omission on the part of the CALJIC drafters, however, does not relieve the trial court of its obligation to instruct the jury, sua sponte, on defenses where "it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913];[9] accord *People* v. *Barraza* (1979) 23 Cal.3d 675, 691 [153 Cal.Rptr. 459, 591 P.2d 947]; *People* v. *Stewart* (1976) 16 Cal.3d 133, 140 [127 Cal.Rptr. 117, 544 P.2d 1317].)

Here, the *Mayberry* defense was consistent with the defendant's theory of the case, and as such, it more than "appears" that the defendant was relying

---

[9] Disapproved on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685, footnote 12 [160 Cal.Rptr. 84, 603 P.2d 1].

on the defense to the charge of forcible penetration with a foreign object. The only remaining consideration is whether there was sufficient evidence to warrant the instruction. Contrary to the suggestions of the Attorney General, we find there was. The victim's testimony can furnish sufficient circumstantial evidence of a good faith and reasonable belief. (*People* v. *Anderson* (1983) 144 Cal.App.3d 55, 62 [192 Cal.Rptr. 409].) Her testimony alone demonstrated equivocal conduct which could have led defendant to believe that consent existed where in fact there was none. (Cf. *People* v. *Romero, supra,* 171 Cal.App.3d at p. 1156.) That evidence alone warranted the instruction.

The final consideration is whether that omission requires reversal of the conviction. We conclude that it does not. The issue of defendant's good faith and reasonable belief in consent was presented to the jury in conjunction with the rape count and rejected. Thus, unlike the situations in which the factual question posed by the omitted *Mayberry* instruction was not necessarily resolved adversely to the defendant requiring reversal (see, e.g., *People* v. *Burnham, supra,* 176 Cal.App.3d at p. 1150; *People* v. *Anderson, supra,* 144 Cal.App.3d at p. 63), here it was and therefore the instructional error does not require reversal. (Cf. *People* v. *Sedeno, supra,* 10 Cal.3d at p. 721; *People* v. *Garcia* (1984) 36 Cal.3d 539, 555 [205 Cal.Rptr. 265, 684 P.2d 826].)

D.[10]

. . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Anderson, P. J., and Channell, J., concurred.

A petition for a rehearing was denied July 14, 1987, and appellant's petition for review by the Supreme Court was denied October 22, 1987.

---

[10]See footnote 1, *ante,* page 119.