Filed 5/17/21  P. v. Portilla CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE ANDRES ROBLES PORTILLA,<br><br>    Defendant and Appellant. | B304075<br><br>(Los Angeles County Super. Ct. No. KA119870) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Bruce F. Marrs, Judge.  Affirmed.
        Adrian K. Yeung for Defendant and Appellant.
        Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jose Andres Robles Portilla appeals the judgment entered following a jury trial in which he was convicted on one count of forcible sodomy.  (Pen. Code, § 286, subd. (c)(2)(A).)[1]  The trial court sentenced appellant to a prison term of eight years. Appellant contends (1) the trial court improperly refused to instruct the jury with the mistake of law defense (CALJIC No. 4.36.1); (2) the evidence is insufficient to support the conviction; and (3) because the court's imposition of a restitution fine, criminal conviction and court operations assessments, and other statutory fines and fees without a determination of appellant's ability to pay violates appellant's constitutional rights, the fines, fees, and assessments must be stricken in accordance with *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).  We disagree and affirm the judgment of conviction.

## FACTUAL BACKGROUND

Appellant and Y.P. became friends while working together at a restaurant.  Their relationship eventually became sexual. Y.P. recalled telling appellant that she did not perform oral or anal sex.

On the night of December 29, 2018, Y.P. and appellant had alcoholic drinks with friends at two local bars.  Later, at Y.P.'s apartment, she and appellant listened to music and drank beer in her bedroom.  After a time, they went outside and smoked a cigarette before reentering the bedroom.  Y.P. suggested they go to the sofa bed in the living room because the bedroom had bunkbeds.

Appellant sat on the sofa bed and Y.P. stood in front of him. The two of them started kissing.  Before they became intimate,

---

[1] Subsequent undesignated statutory references are to the Penal Code.

Y.P. told appellant she was on the last day of her menstrual period.  Appellant said it was okay.  They removed their clothes.  Y.P. positioned herself on hands and knees on the sofa bed.  Appellant knelt behind her and stroked his penis.  After rubbing it against her buttocks, appellant inserted his penis into her vagina.  After a couple of thrusts, appellant removed his penis.  Appellant then placed his penis on Y.P.'s anus and attempted penetration.  As soon as Y.P. "felt the pressure," she said, "What are you doing?" and told appellant twice to stop.  When appellant did not stop, Y.P. fell forward on her chest.  Appellant was still on his knees.

Y.P. twisted her body, attempting to turn over, but appellant was on top of her.[2]  Y.P. tried to push herself up and told appellant to get off her, but he did not respond.  Appellant grabbed Y.P. by the shoulders, spread her legs with his knees, and pulled her toward him as he forced his penis about half-way into her anus.  Y.P. was crying in pain and kept telling him to stop.  But the more she told him to stop, the more appellant penetrated her anus.  Y.P. continued to cry and clutched the blanket, as appellant sodomized her about five times.  By that point, Y.P. had become silent, just wanting it to be over.

Appellant stopped and got off Y.P.  She went into the bedroom, wrapped herself in a towel, lay on her bed, and cried.  Appellant entered the bedroom, fully dressed, and apologized.  Y.P. told him to leave her home.  Appellant, again, apologized.  Y.P. said she never wanted to see appellant again and repeatedly demanded that he leave.  Appellant told her, "I'm sorry.  I'm

---

[2] Y.P. was five feet two inches tall and weighed 130 pounds.  Appellant was approximately six feet tall and weighed 200 pounds.

3

dumb.  I know what I did."  Y.P. said, "You know you just raped me."  Appellant responded, "Yes, I know," and said he was going "to call the cops."  Appellant called 911 and reported he "had raped somebody."[3]

Police officers arrived and found appellant pacing in the carport of the apartment building.  He appeared to be nervous.  Appellant acknowledged he had called the police because he and Y.P. had sexual intercourse and she was crying afterward.  Appellant said he felt bad.  The officers spoke to Y.P., who appeared to be in shock.  She told them appellant had raped her.

Later, during a police interview, appellant admitted Y.P.'s report that he had "anal sex with her against her will," "forcibly against her will," was "true."[4]  Appellant further stated, "I decided to put it [his penis] in her butt."

A sexual assault examination revealed Y.P. sustained multiple lacerations in her anus consistent with blunt force trauma.  She experienced pain in her anus for about a week.

Appellant testified in his defense that he and Y.P. had engaged in consensual vaginal intercourse that night, during which she moaned but did not say anything else.  At some point when they were having sex, Y.P. dropped to her chest and appellant fell on top of her.  She began to cry and appellant stopped having intercourse.  Y.P. then left for the bedroom.  Appellant got dressed and went into the bedroom to ask why Y.P. was crying.  Y.P. accused him of "basically raping" her by penetrating her anus.  Appellant repeatedly denied it and decided

[3] The audio recording of the 911 call was played for the jury and a transcript was provided.

[4] The audio recording of this interview was played for the jury and a transcript was provided.

to call the police because he was being accused of something he knew was wrong.

Appellant denied he had previously discussed anal sex with Y.P. or engaged in anal sex with her that night; they had vaginal intercourse.  Appellant also testified he told the 911 operator and a police officer that he had committed rape and sodomy because that is what he had been accused of by Y.P.

## DISCUSSION

I.    **The Trial Court Properly Refused to Instruct the Jury with the Mistake of Law Defense**

    A.    **Relevant proceedings**

During the discussion of jury instructions, defense counsel requested the jury be instructed with CALJIC No. 4.36.1, "Ignorance or Mistake of Law—When a Defense."[5]  The trial

---

[5] CALJIC No. 4.36.1 provides:  "It is the general rule that when a person voluntarily commits an act or engages in conduct which the law declares a crime, it is no defense that [he] [she] was unaware that the act or conduct was unlawful or that [he] [she] believed it to be lawful.  [¶]  [It is no defense to the crime[s] of _____ [, and _____ ], that the perpetrator acted under a mistake of law.]  [¶]  However, there is an exception to this general rule, namely, where a [specific intent] [or] [mental state] is an essential element of the crime, an actual mistake of law may negate that [intent] [or] [mental state].  The crime[s] of _____ [, and _____ ] require the existence in the mind of the perpetrator of [a] certain [specific intent[s] [or] [mental state[s]] included in the definition of the crime[s] set forth elsewhere in these instructions].  In order for an actual mistake of law to be a defense, the mistake must be one that shows the absence of that required [specific intent] [or] [mental state].  In other words, the defendant must have had an honest belief that the conduct engaged in was lawful."

5

court noted that "sodomy is a general intent crime" and expressed skepticism the instruction was warranted, "particularly that last paragraph: In order for an actual mistake of law to be a defense, the mistake must be one that shows the absence of that required specific intent." Counsel responded, "Or mental state." The court asked, "What mental state is required for a general intent crime?" Counsel answered, "It's a general intent crime. It's still an intent whether you call it specific or general intent." Counsel then referred to the Use Note for CALJIC No. 4.36.1, which he urged supported giving the instruction where the information contains both general intent and specific intent crimes, which are both mental states.[6] The court, looking to the instructions for mental state (CALJIC No. 3.31.5), general intent (CALJIC No. 3.30), and specific intent (CALJIC No. 3.31), observed they are each defined differently and denied the request.

In closing argument, the prosecutor maintained appellant forcibly sodomized Y.P. without her consent. Defense counsel argued to the jury that appellant (1) believed they were engaging in consensual vaginal sexual intercourse; (2) unknowingly inserted his penis into Y.P.'s anus, and (3) stopped when he was able to hear her withdraw her consent by crying.

### B. Relevant legal principles

The general rule is that in a criminal case the trial court must instruct on the "principles of law relevant to the issues raised by the evidence [citations] and has the correlative duty 'to

---

[6] The Use Note for CALJIC No. 4.36.1 reads in pertinent part: "This instruction can be used when mistake of law may constitute a defense to a crime. It may be used where the information contains both general intent crimes and specific intent crimes or only specific intent crimes."

refrain from instructing on principles of law which not only are irrelevant to the issues raised by the evidence but also have the effect of confusing the jury or relieving it from making findings on relevant issues.' " (*People v. Saddler* (1979) 24 Cal.3d 671, 681.) The " 'principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) This obligation has been held to include giving instructions on defenses that are supported by substantial evidence and are not inconsistent with the defendant's theory of defense. (*People v. Montoya* (1994) 7 Cal.4th 1027, 1047.) Moreover, where the jury has been fully instructed on the applicable legal principles pertinent to a case, the trial court is not required to give instructions sua sponte that elaborate or "pinpoint" the defendant's theory of the case absent a request. (*People v. Dennis* (1998) 17 Cal.4th 468, 514.) On appeal, we independently review whether the trial court erred by failing to instruct on a defense. (See *People v. Waidla* (2000) 22 Cal.4th 690, 733, 737.)

## C.  CALJIC No. 4.36.1 was properly rejected

Appellant contends the trial court prejudicially erred by failing to instruct the jury with CALJIC No. 4.36.1. He argues the instruction concerns "mental state," which is different from general and specific intent. Appellant posits: "To find appellant guilty, the jury had to find or believe that appellant's state of mind was such that he knew [Y.P.] had withdrawn her consent. If appellant is mistaken in this belief, then an 'honest' belief on his part leads to his exoneration, pursuant to this instruction." Appellant maintains without CALJIC No. 4.36.1, he was prevented from arguing he "did not hear and therefore did not

7

know [Y.P.'s] consent had been withdrawn." Thus, if the jury found Y.P. "withdrew consent, then appellant [was] automatically guilty."

Appellant misperceives CALJIC No. 4.36.1. The instruction states it applies when a mistake of law negates a specific intent (see *People v. Howard* (1984) 36 Cal.3d 852, 862–863; *People v. Vineberg* (1981) 125 Cal.App.3d 127, 137; *People v. Urziceanu* (2005) 132 Cal.App.4th 747, 779) or a mental state (see *People v. Noori* (2006) 136 Cal.App.4th 964, 977–978) that is an essential element of the crime. The instruction makes clear that it does not apply to general intent crimes, ignorance of the law being no excuse. (See *People v. Stewart* (1976) 16 Cal.3d 133, 140; *People v. Cole* (2007) 156 Cal.App.4th 452, 483.)

Forcible sodomy is a general intent crime. (*People v. Warner* (2006) 39 Cal.4th 548, 557; *People v. Whitham* (1995) 38 Cal.App.4th 1282, 1293.) The only intent required is the intent to engage in the proscribed sexual act itself. (See *People v. Davis* (1995) 10 Cal.4th 463, 518, fn. 15.) That does not mean the required intent is simply to have anal sex, but rather, to have anal sex "against the victim's will [without the victim's consent] by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury." (§ 286, subd. (c)(2)(A); see *People v. Giardino* (2000) 82 Cal.App.4th 454, 460; *People v. Guerra* (2006) 37 Cal.4th 1067, 1130, overruled in part on other grounds in *People v. Rundle* (2008) 43 Cal.4th 76, 151 [discussing forcible rape].) Thus, the trial court correctly rejected defense counsel's request to charge the jury with CALJIC No. 4.36.1.

Although appellant claims he was entitled to a mistake of law instruction, his argument suggests a mistake of fact defense. Unlike a mistake of law, where a person knows the facts but is

8

mistaken as to their legal consequences, with a mistake of fact, a person understands the facts to be other than what they actually are. (*People v. LaMarr* (1942) 20 Cal.2d 705, 710.) A reasonable mistake of fact can be asserted as a defense to a general intent crime. (*People v. Noori, supra*, 136 Cal.App.4th at pp. 976–977.) It applies to section 286, subdivision (c)(2)(A) if there is substantial evidence the defendant honestly and reasonably, but mistakenly, believed the victim voluntarily consented to sodomy. (See *People v. Castillo* (1987) 193 Cal.App.3d 119, 125–126; CALJIC No. 10.65.) Here, appellant's defense theory was not that he honestly and reasonably believed Y.P. had consented to sodomy, but that he did not know he was sodomizing her and mistakenly believed she had consented to what he thought was vaginal sexual intercourse and was unaware she had withdrawn her consent until she was crying.[7] As the jury was instructed, the burden was on the prosecution to prove appellant was intentionally sodomizing Y.P. against her will and by the use of force.

Further, contrary to appellant's contention, defense counsel was able to argue the issue of withdrawn consent. He first acknowledged to the jury that Y.P. withdrew her consent. Counsel then argued appellant was unaware Y.P. had withdrawn her consent until he heard her crying, and he responded by stopping. Counsel argued under CALJIC No. 1.23.1 appellant's

---

[7] We note defense counsel did not request a CALJIC No. 4.45 instruction on the accident or misfortune defense, which amounts to a claim that the defendant acted without forming the mental state (general intent) necessary to make his or her actions a crime, but, here, there was insufficient evidence to support the defense.

lack of awareness before that point was reasonable under the circumstances, meaning appellant was not intentionally acting against Y.P.'s will by continuing his conduct. Whether appellant's lack of awareness was an "honest mistake" is part and parcel of reasonableness and, in any event is of no consequence because no evidence was presented that Y.P. ever consented to anal intercourse.

Finally, appellant also contends that even if the instruction were not given, "a pinpoint instruction could have been drafted that considered the element of mistake on the issue of consent." Appellant has forfeited this issue for failing to request such an instruction from the trial court. (*People v. Young* (2005) 34 Cal.4th 1149, 1202.)

## II. Substantial Evidence Supports the Sodomy Conviction

Appellant contends the evidence was insufficient to convict him of sodomy in the absence of the CALJIC No. 4.36.1 instruction applied to the withdrawal of consent. This is not a challenge to the sufficiency of the evidence, but a repetitive claim of instructional error, which we have concluded is without merit for the reasons discussed. Nonetheless, because appellant has framed the issue as a challenge to the sufficiency of evidence, we address it on that basis.

### A. Relevant legal principles

To prove the crime of forcible sodomy (§ 286, subd. (c)(2)(A)) the prosecution must prove (1) the defendant engaged in an act of sodomy with an alleged victim; (2) the victim did not consent to the act, and (3) the act was accomplished by force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the victim or another person. Sodomy, in turn, "is sexual

conduct consisting of contact between the penis of one person and the anus of another person. Any sexual penetration, however slight, is sufficient to complete the crime of sodomy." (§ 286, subd. (a).)

Assessing appellant's substantial evidence claim, " 'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Avila* (2009) 46 Cal.4th 680, 701; see *People v. Watkins* (2012) 55 Cal.4th 999, 1019–1020.) We draw all reasonable inferences in favor of the verdict and presume the existence of every fact the jury could reasonably deduce from the evidence that supports its findings. (*People v. Maciel* (2013) 57 Cal.4th 482, 515; *People v. Kraft* (2000) 23 Cal.4th 978, 1053.) Unless a witness's testimony is physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction. (*People v. Young*, *supra*, 34 Cal.4th at p. 1181.) "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts." (*Ibid.*; see *People v. Maury* (2003) 30 Cal.4th 342, 403.) Rather, " 'it is the exclusive province of the . . . jury to determine the credibility of a witness and the truth or falsity of the facts,' " and it is not for us to substitute our judgment for that of the jury's. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) Finally, the trier of fact may rely on inferences to support a conviction where "those inferences are 'of such substantiality that a reasonable trier of fact could determine beyond a reasonable doubt' that the inferred facts are true." (*People v. Rios* (2013) 222 Cal.App.4th 542, 564.)

### B. There was sufficient evidence to support the finding appellant acted against Y.P.'s will

Sufficient evidence supported the sodomy conviction, particularly as it relates to the element of consent. The evidence is uncontroverted that Y.P. never consented to engage in sodomy. Y.P. testified to having previously told appellant that she did not perform anal sex. On the night of the incident, Y.P. demanded repeatedly that appellant stop penetrating her anus, attempted to turn her body to push him off her, and cried out in pain. Y.P.'s testimony, the blunt force trauma she suffered, and appellant's admissions constituted ample evidence she was sodomized against her will and by force.

## III. Appellant's *Dueñas* Claim Lacks Merit

At sentencing, the trial court imposed a $2,400 restitution fine, a $2,400 stayed parole revocation fine, a $30 criminal conviction assessment, a $40 court operations assessment, a $300 sexual offender program fund fee, a $60 criminal fine surcharge, and $930 in court costs. Appellant contends the trial court's imposition of statutory fines, fees, and assessments was unconstitutional under *Dueñas, supra,* 30 Cal.App.5th 1157. The trial court imposed the fines, fees, and assessments without objection from appellant one year after *Dueñas* was decided.

Despite his failure to raise this claim in the trial court and the absence of any evidence or concern over his ability to pay, appellant nevertheless asserts he is entitled to remand to enable the trial court to determine his ability to pay. Appellant has forfeited any challenge to the fines and fees imposed at sentencing. (*People v. Aguilar* (2015) 60 Cal.4th 862, 866 [failure to object to imposition of fees at sentencing forfeited the issue for appeal]; *People v. Avila* (2009) 46 Cal.4th 680, 729 [defendant's

failure in the trial court to assert his inability to pay a restitution fine over the statutory minimum forfeited the challenge].)  In any event, we reject the claim on the merits.

We decline to extend *Dueñas*'s broad holding beyond the extreme facts in that case, which are not present here.  Dueñas was a disabled, unemployed, and often homeless mother of two young children.  Over the course of several years she served jail time because she could not pay the fines imposed in connection with various misdemeanor Vehicle Code offenses.  (*Dueñas, supra,* 30 Cal.App.5th at pp. 1160–1162.)  Applying a due process analysis to the particular facts before it, the appellate court concluded that "[b]ecause the only reason Dueñas cannot pay the fine and fees is her poverty, using the criminal process to collect a fine she cannot pay is unconstitutional." (*Dueñas,* at p. 1160.)

This case plainly does not implicate the same due process concerns at issue in the factually unique *Dueñas* case.  Unlike the defendant in *Dueñas*, there is no indication here that appellant suffers from a disability, that he has been unable to pay court assessments in the past, that he lacks savings or assets that could be sold, or that he needs to devote his limited resources to vital childcare needs.  At sentencing, appellant was 24 years old and gainfully employed prior to trial.  There is nothing in the record to indicate he lacks the ability to obtain the funds for payment of his obligations in the future.  And unlike the defendant in *Dueñas*, appellant does not face incarceration because of an inability to pay court-imposed fines, fees, and assessments.  (See *Dueñas, supra,* 30 Cal.App.5th at p. 1163.)

In *People v. Hicks* (2019) 40 Cal.App.5th 320, 322 (Hicks), review granted November 26, 2019, S258946,[8] we concluded that *Dueñas* was wrongly decided and rejected its holding that "due process precludes a court from 'impos[ing]' certain assessments and fines when sentencing a criminal defendant absent a finding that the defendant has a 'present ability to pay' them." (Accord, *People v. Petri* (2020) 45 Cal.App.5th 82, 92; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1067–1068; *People v. Caceres* (2019) 39 Cal.App.5th 917, 923, 926–927; *People v. Kingston* (2019) 41 Cal.App.5th 272, 279–282; *People v. Kopp* (2019 38 Cal.App.5th 47, 96–97, review granted Nov. 13, 2019, S257844.)

Here, as in *Hicks*, "imposition of these financial obligations has not denied [appellant] access to the courts," nor has their imposition resulted in his incarceration. (*Hicks, supra*, 40 Cal.App.5th at p. 329.) And nothing prevents appellant from trying to satisfy these obligations through future earnings. (*Id.* at pp. 327, 329.)

---

[8] The California Supreme Court ordered briefing deferred pending decision in *People v. Kopp*, S257844, which presents the following issues: "(1) Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments? (2) If so, which party bears the burden of proof regarding the defendant's inability to pay?" (*People v. Hicks*, S258946 <https://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=0&doc_id=2302457&doc_no=S258946&request_token=NiIwLSEmXkw8W1BZSCNNTEtIUEQ0UDxTJiBeIz5SUCAgCg% 3D% 3D> [as of Apr. 20, 2020], archived at <https://perma.cc/M53U-K638>.)

Moreover, the restitution fine is classified as a form of *punishment*. (*People v. Souza* (2012) 54 Cal.4th 90, 143.) Its imposition without regard to present ability to pay therefore does not violate appellant's due process rights because it is "*not a user fee* imposed on court access." (*People v. Son* (2020) 49 Cal.App.5th 565, 592.) As the United States Supreme Court has recognized, due process is implicated only where a defendant, who has no ability to pay, is imprisoned for failure to pay a punitive fine. (See *Bearden v. Georgia* (1983) 461 U.S. 660, 665, 667–668 [103 S.Ct. 2064, 76 L.Ed.2d 221]; *Tate v. Short* (1971) 401 U.S. 395, 398 [91 S.Ct. 668, 28 L.Ed.2d 130] [" 'the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full' "].)

Finally, the fines and fees imposed in this case are not excessive. Appellant was convicted of forcible sodomy. He took advantage of his romantic partner during an otherwise consensual sexual encounter. He forcibly performed anal intercourse despite his partner's repeated demands that he stop and caused her to suffer deep lacerations to her anal region and protracted pain. Appellant was sentenced to state prison. On this record, we do not find the statutory fines, fees, and assessments to be " 'grossly disproportional to the gravity of [appellant's] offenses.' " (*Cooper Indus. v. Leatherman Tool Group, Inc.* (2001) 532 U.S. 424, 434 [121 S.Ct. 1678, 149 L.Ed.2d 674].)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

CHAVEZ, J.

16