Filed 3/28/25  P. v. Vaughan CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| THE PEOPLE, | C101096 |
| Plaintiff and Respondent, | (Super. Ct. No. 21F8263) |
| v. | |
| JAY VAUGHAN, | |
| Defendant and Appellant. | |

A jury found defendant Jay Vaughan guilty of forcible sexual penetration.  The trial court sentenced defendant to the middle term of six years.

On appeal, defendant contends the prosecutor committed misconduct in closing argument by stating there was no "presumption of consent," thereby relieving the prosecution of the burden of proving the victim's lack of consent and defendant's lack of belief in consent.  Defendant further contends that if these claims were forfeited on

1

appeal by his trial counsel's failure to object, this omission constituted ineffective assistance of counsel. We conclude defendant forfeited the claim but he did not receive ineffective assistance. We affirm the judgment.

## I. BACKGROUND

In January 2021, D.F.[1], a 19-year-old biological female transitioning to a male, was staying in a house in Calaveras County with C.C. Defendant lived in a trailer on the property. On January 28, 2021, D.F. got the mail from the mailbox, which included mail for defendant. D.F. brought the mail to defendant in his trailer. Defendant and D.F. struck up a conversation, which turned to the subject of D.F.'s gender identity.

Defendant asked D.F. about his sexual preferences and sexual history. When defendant asked D.F. if he knew about any good sex toys, D.F. told defendant about a website. Defendant asked D.F. to show him the website and indicated D.F. should use defendant's phone charging on the bed. D.F. sat on the bed and picked up the phone. D.F. showed the website to defendant, who came over and sat next to him on the bed. D.F. moved an inch away from defendant on the bed. Defendant moved an inch closer. Defendant offered to buy D.F. anything he wanted on the website. Defendant started talking about his sexual preferences.

Defendant complimented D.F.'s hands, touched his hands, and then started to put D.F.'s hand on defendant's crotch. D.F. pulled his hand away. Defendant put his hand on D.F.'s thigh; D.F. tried to push it off. Defendant spit on his fingers and put his hand down D.F.'s pants inside his boxer shorts and on top of his vagina. Defendant inserted his fingers in D.F.'s vagina. Defendant told D.F. to lay back. Defendant put an elbow on D.F.'s chest and leaned his weight on the elbow, forcing D.F. to lay back. Defendant moved his fingers in D.F.'s vagina. Defendant asked D.F. if it felt good. D.F. said he

---

[1] We refer to the victim by his initials, pursuant to California Rules of Court, rule 8.90(b)(4).

2

could not feel much "down there." Defendant then became "rougher and harder." D.F. never told defendant to stop. Defendant continued for 10 to 20 minutes. Defendant took his hand out of D.F.'s pants and again offered to buy him a sex toy.

D.F. went back to the house and told C.C. what had happened. C.C. said D.F. could do nothing or call the police. D.F. chose to call the police and C.C. dialed 911 for him. A police officer responding to the 911 call gathered D.F.'s clothes as evidence and took a DNA swab from D.F.

The next day the police officer interviewed defendant about D.F.'s report. Defendant said nothing happened; he and D.F. had just talked. When the officer returned later with a search warrant for defendant's DNA, defendant said D.F. had pulled his own pants down and " 'reached over and . . . got ahold of [defendant].' "

A combination of D.F.'s and defendant's DNA was found in D.F.'s boxer shorts. When the officer told defendant his DNA was in D.F.'s underwear, defendant said that D.F. had taken off his underwear and sat on defendant's bed.

C.C. testified for the defense at trial. She testified that, on January 28, 2021, D.F. said he wanted to deliver defendant's mail. D.F. was gone for 10 to 15 minutes. When D.F. returned to the house, D.F. said that defendant had done something to him, and C.C. responded that she did not believe D.F. D.F. then went to bed. D.F. never called the police and the police never came.

Defendant testified at trial. Defendant testified that when D.F. came to his trailer on January 28, 2021, defendant had just gotten out of the shower. Defendant covered himself with a towel. D.F. sat down next to defendant, touching him. D.F. told defendant he was transitioning to become a male. D.F. took defendant's phone and showed him sex toys. D.F. stood up, pulled down his pants, and grasped defendant's penis. Defendant told D.F. to leave. D.F. started talking about doing other sexual things. Defendant heard C.C. calling for D.F. and again told him to leave.

3

Defendant testified he told a police officer nothing happened because he did not want to get D.F. in trouble. Defendant later changed his story because defendant believed he was now in trouble. Defendant denied putting his hands on D.F. or touching him in an inappropriate way.

In rebuttal, the People introduced a 911 call log reporting D.F.'s statement that defendant touched him and identifying C.C. as the reporting party. A police officer who later interviewed C.C. reported she said that defendant told her nothing happened; D.F. had sat on defendant's lap and he told D.F. to get off.

An information charged defendant with forcible sexual penetration (Pen. Code, § 289, subd. (a)(1)(A)).[2] The matter was tried by a jury in February 2024. The jury found defendant guilty of the charge. The trial court sentenced defendant to the middle term of six years.

Defendant filed a timely notice of appeal.

## II. DISCUSSION

Defendant contends that the prosecutor committed misconduct when, in closing argument, he stated that there was no "presumption of consent." Defendant acknowledges that trial counsel's failure to object to the claimed misconduct, as here, will forfeit the issue on appeal. If the claim was forfeited, defendant contends counsel's failure to object gives rise to a claim of ineffective assistance of counsel. We conclude defendant's prosecutorial misconduct claim was forfeited. And defendant's ineffective assistance claim fails because there was a conceivable tactical reason for counsel's omission and defendant cannot show prejudice.

The trial court instructed the jury on the elements of the crime of forcible sexual penetration with CALCRIM No. 1045, as follows: "The defendant is charged with

---

[2] Undesignated statutory references are to the Penal Code.

4

sexual penetration by force in violation of . . . [s]ection 289. To prove the defendant is guilty of this crime, the [P]eople must prove that, [one], the defendant committed an act of sexual penetration with another person. [Two], the penetration was accomplished by using a foreign object. [Three], the person did not consent to the act, and [four], the defendant accomplished the act by force, violence, duress, menace, or fear of immediate and unlawful bodily injury to another person."

CALCRIM No. 1045 includes two paragraphs addressing consent: (1) "In order to consent, a person must act freely and voluntarily and know the nature of the act," and (2) "The defendant is not guilty of forcible sexual penetration if [he] actually and reasonably believed that the other person consented to the act. The People have the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe that the other person consented. If the People have not met this burden, you must find the defendant not guilty."

In his initial closing, the prosecutor argued: "Now, there is an element in here of consent. If the defendant believed that this act was consensual, then you have to find him not guilty, but I submit to you that if we start looking at just the macro picture, is there going to be a presumption of consent when—and we have different ages on the jury, so is there a presumption of consent with someone your grandchild's age? No one would say yes. Is there a presumption of consent with someone of your grandfather or your grandmother's age? Absolutely not."

Defendant argues that "[t]hese comments crossed the line into being legally incorrect." Defendant reasons that the presumption of innocence extends to every element of the crime that the People must prove including the lack of an actual and reasonable belief in consent. Defendant argues, jurors could understand the prosecutor's arguments to mean the presumption of innocence did not extend to lack of consent or belief in consent. Thus, defendant maintains the prosecutor's comments lessened the

5

People's burden of proof to prove absence of consent or belief in consent beyond a reasonable doubt.

"Though it is improper for a prosecutor to misstate the law [citation], such misstatements 'are generally curable by an admonition from the court.' [Citation.] Thus, ' " '[a]s a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.' " ' " (*People v. Henderson* (2020) 46 Cal.App.5th 533, 548; see also *People v. Thornton* (2007) 41 Cal.4th 391, 454; *People v. Potts* (2019) 6 Cal.5th 1012, 1035.)

Here, defense counsel did not object to the prosecutor's "presumption of consent" comments on the grounds that the prosecutor misstated the law or lowered the People's burden of proof and did not request an admonition to cure the alleged harm. Thus, defendant forfeited the claim of prosecutorial misconduct. (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1164-1165 (*Johnsen*).)

As defendant points out, "[a] defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel." (*People v. Lopez* (2008) 42 Cal.4th 960, 966.)

"To demonstrate ineffective assistance of counsel, [the defendant] 'must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.' [Citations.] On direct appeal, a finding of deficient performance is warranted where '(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.' " (*Johnsen, supra*, 10 Cal.5th at p. 1165.) " '[W]here counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.' " (*Ibid.*)

6

"We have said that 'the decision . . . whether to object to comments made by the prosecutor in closing argument is a highly tactical one.' " (*Ibid*.)

We can conceive of a tactical reason for defense counsel to remain silent. The prosecutor's comments—that D.F. was not presumed to consent because of the age difference—were brief and not especially persuasive. It was undisputed that D.F. showed defendant a sex toy website while sitting on his bed, notwithstanding the age difference. In fact it was this evidence of consent that defense counsel highlighted in closing. (See *People v. Castillo* (1987) 193 Cal.App.3d 119, 126 [victim's testimony "demonstrated equivocal conduct which could have led defendant to believe that consent existed where in fact there was none"].)

Defense counsel argued: "We know that [D.F.] and [defendant] were sitting closely on the bed. We know this. They both testified to this. That's not a fact in dispute. We also know that they were looking at a sex toy website, a sex toy website sitting on a bed close together looking at a sex toy website."

Defense counsel continued: "Now, ask yourself, what would, in this case, a man in a situation like that think sitting on a bunk, as [defendant] calls it, a bed, with a biological female sitting next to you only inches away sharing a cellphone and looking at a sex toy website? What would a man think in that position? Would they be thinking that this is a no coming from the female? No. There is absolutely nothing in that scenario, two people sitting on a bed, a male, a biological female looking at a porn sex toy website that says no. All that says is consent [has] to be there."

Viewed through the lens of trial tactics, the prosecutor's argument for lack of consent based on age difference, in his initial closing argument, gave defense counsel an opportunity to make an argument to the jury in her closing that defendant's belief in consent was reasonable based on D.F.'s actions.

Moreover, defendant's ineffective assistance claim also fails because he cannot show prejudice because of counsel's failure to object to the prosecutor's comments. A

7

defendant "bears the burden of showing prejudice, that is, a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 676 (*Centeno*), quoting *Strickland v. Washington* (1984) 466 U.S. 668, 694.)

The day before the prosecutor's closing argument the trial court instructed the jury with CALCRIM No. 220: "The defendant in a criminal case is presumed to be innocent. This presumption requires that the [P]eople prove the defendant guilty beyond a reasonable doubt. Whenever I tell you the [P]eople must prove something, I mean they must prove it beyond a reasonable doubt." CALCRIM No. 1045 instructed the jury that the People must prove lack of consent and, specifically "[t]he [P]eople have the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe that the other person consented. If the [P]eople have not met this burden, you must find the defendant not guilty."[3] Thus, the general instruction on presumption of innocence and the People's burden to prove guilt beyond a reasonable doubt was further reinforced by a specific instruction on the elements of the charged crime that emphasized the People's burden to prove lack of belief of consent beyond a reasonable doubt.

" 'When argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." ' " (*Centeno, supra*, 60 Cal.4th at p. 676; see *People v. Meneses* (2019) 41 Cal.App.5th 63, 75 ["We presume the jury followed the court's instructions, rather than any conflicting comment by counsel, in reaching a verdict"].)

---

[3]  Jurors were given copies of the instructions to bring into the jury room during deliberations.

To the extent that the prosecutor's comments suggested that the presumption of innocence did not extend to consent or it was not the People's burden to prove consent or lack of belief in consent beyond a reasonable doubt, that argument ran counter to the trial court's instructions. The jury was expressly instructed that "[i]f you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions."

Moreover, after the prosecutor presented his opening argument, the prosecutor advised the trial court that one reasonable doubt instruction may not have been given. The trial court stated its belief that the instruction had been given, but in abundance of caution again instructed the jury on reasonable doubt that defendant having been charged with a crime was not evidence that the charge was true. Before giving this instruction, the court advised the jury that "[a] question came up whether I gave you the instruction on reasonable doubt" and asked jurors if it had in fact given this instruction previously. Jurors responded affirmatively. Thus, the critical significance of instructions on reasonable doubt were in the forefront of the minds of the jurors during closing arguments.

Under these circumstances, it is not probable that defendant would have received a more favorable verdict had defense counsel objected to the prosecutor's comments referencing "presumption of consent."

## III. DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

EARL, P. J.

/S/

_____

DUARTE, J.